UNITED STATES *v.* OJEDA RIOS ET AL.

No. 89–61.   Argued February 28, 1990—Decided April 30, 1990

258

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. O'CONNOR, J., filed a concurring opinion, in which BLACKMUN, J., joined, *post*, p. 267. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 268.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Dennis, Harriet S. Shapiro,* and *Patty Merkamp Stemler.*

*Richard A. Reeve,* by appointment of the Court, 493 U. S. 1015, argued the cause for respondents. With him on the brief were *Diane Polan, John R. Williams, Michael E. Deutsch, Ronald L. Kuby,* and *Margaret P. Levy.**

JUSTICE WHITE delivered the opinion of the Court.

This case arises under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), as amended, 18 U. S. C. § 2510 *et seq.*, which regulates the interception of wire, oral, and electronic communications. Except under extraordinary circumstances, see § 2518(7), electronic surveillance may be conducted only pursuant to a court order. See §§ 2518(1)–(6). Section 2518(8)(a) requires that "[t]he contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device" and that recording "shall be done in such way as will protect the recording from editing or other alterations." The section further provides that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing

---

*Briefs of *amici curiae* urging affirmance were filed for the Asian-American Legal Defense and Education Fund et al. by *David D. Cole;* and for the National Association of Criminal Defense Lawyers by *Robert Glass.*

such order and sealed under his directions." Section 2518(8) (a) has an explicit exclusionary remedy[1] for noncompliance with the sealing requirement, providing that "[t]he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517."[2]

In this case, a series of court orders authorized electronic surveillance. The tapes later offered in evidence bore seals but the seals on the tapes at issue had not been immediately attached as required by the statute. The issue we address is whether § 2518(8)(a) requires suppression of those tapes.

Respondents are members of a Puerto Rican organization known as Los Macheteros (the "machete wielders"). All have been charged with federal crimes relating to the robbery in 1983 of a Wells Fargo depot in Connecticut, a robbery which netted approximately $7 million. The Government first began investigating respondents in connection with a rocket attack on the United States Courthouse in Hato Rey, Puerto Rico. Effective April 27, 1984, the Government obtained an order of electronic surveillance for the residence of Filiberto Ojeda Rios in Levittown, Puerto Rico, and for some public telephones near the residence. During its investigation of the rocket attack, the Government discovered evi-

---

[1] Title III also contains a general suppression remedy, not applicable in this case, that provides for suppression when electronic communications have been unlawfully intercepted, were intercepted pursuant to a court order that is facially invalid, or were not intercepted in conformity with the order of authorization. See 18 U. S. C. § 2518(10).

[2] Section 2517(3) provides that "[a]ny person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof."

dence indicating that respondents had been involved in the Wells Fargo depot robbery. The Government obtained two extensions of the April 27 surveillance order, with the final extension expiring on July 23, 1984. The Government actually terminated surveillance at the Levittown residence and public telephones on July 9, 1984, when Ojeda Rios moved to an apartment in El Cortijo, a community adjacent to Levittown. On July 27, 1984, the Government obtained a new surveillance order covering Ojeda Rios' El Cortijo residence. After extensions, that order expired on September 24, 1984. Another surveillance order authorizing surveillance of Ojeda Rios' car, originally entered on May 11, 1984, was extended and finally expired on October 10, 1984. All tapes created during the surveillance of Ojeda Rios were sealed by the United States District Court for the District of Puerto Rico on October 13, 1984.

As part of the Wells Fargo robbery investigation, the Government obtained a court order on November 1, 1984, authorizing it to wiretap a residence shared by Juan Segarra Palmer and Luz Berrios Berrios in Vega Baja, Puerto Rico. The District Court extended that authorization order each month for seven months, with the last extension expiring on May 30, 1985. The Government also obtained a court order authorizing it to wiretap two public telephones in Vega Baja, effective January 18, 1985. That order expired on February 17, 1985, and due to difficulties in finishing the affidavit necessary to obtain an extension, the Government did not apply for an extension until March 1, 1985. The District Court issued a new order on that date. The order was thereafter extended twice and finally expired on May 30, 1985. All tapes from the Vega Baja wiretaps were judicially sealed on June 15, 1985.

After respondents were indicted for various offenses relating to the Wells Fargo depot robbery, they moved to suppress all evidence the Government had obtained as a result of electronic surveillance. Following a suppression hearing,

the United States District Court for the District of Connecticut refused to suppress the El Cortijo and Vega Baja residence tapes, but suppressed the Levittown tapes and the public telephone tapes made in Vega Baja. 695 F. Supp. 649 (1988). In doing so, the District Court determined that the July 27, 1984, order authorizing the wiretap at the El Cortijo residence was not an extension of the April 27, 1984, order authorizing the Levittown wiretaps and, therefore, the obligation to seal the Levittown tapes arose when the last extension of the April 27 order expired on July 23, 1984. The court calculated that there had been at least an 82-day delay in sealing the Levittown tapes. With respect to the public telephone wiretaps in Vega Baja, the court determined that the March 1, 1985, order could not be considered an extension of the initial January 18, 1985, order—which had expired on February 17, 1985—because of the 12-day delay in seeking reauthorization of the January 18 order and the Government's failure to satisfactorily explain that delay. The court calculated that the sealing of the tapes on June 15, 1985, occurred 118 days after the order which authorized the surveillance had expired. Without determining the authenticity of these two sets of tapes, the District Court suppressed them on the basis of the delay alone.

The United States Court of Appeals for the Second Circuit affirmed the suppression of the tapes, 875 F. 2d 17 (1989), rejecting the Government's explanation for the sealing delays. Because the scope and role of the sealing provision of Title III has generated disagreement in the lower courts, we granted certiorari, 493 U. S. 889 (1989), and now vacate and remand.

The Government first argues that because § 2518(8)(a) states that as a prerequisite to admissibility, electronic surveillance tapes must either bear a seal or the Government must provide a "satisfactory explanation" for the "absence" of a seal, the "satisfactory explanation" requirement does not apply where the tapes to be offered in evidence actually bear

a seal, regardless of when or why the seal was applied. This argument is unpersuasive. The narrow reading suggested by the Government is not a plausible interpretation of congressional intent when the terms and purpose of § 2518(8)(a) are considered as a whole. The section begins with the command that tapes shall be sealed "immediately" upon expiration of the underlying surveillance order and then, prior to the clause relied upon by the Government, provides that "the seal *provided for by this subsection*" (emphasis added) is a prerequisite to the admissibility of electronic surveillance tapes. The clear import of these provisions is that the seal required by § 2518(8)(a) is not just any seal but a seal that has been obtained *immediately* upon expiration of the underlying surveillance order. The "absence" the Government must satisfactorily explain encompasses not only the total absence of a seal but also the absence of a timely applied seal. Contrary to what is so plainly required by § 2518(8)(a), the Government would have us nullify the immediacy aspect of the sealing requirement.

The primary thrust of § 2518(8)(a), see S. Rep. No. 1097, 90th Cong., 2d Sess., 105 (1968), and a congressional purpose embodied in Title III in general, see, *e. g.*, *United States* v. *Giordano*, 416 U. S. 505, 515 (1974), is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance. The presence or absence of a seal does not in itself establish the integrity of electronic surveillance tapes. Rather, the seal is a means of ensuring that subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded. It is clear to us that Congress viewed the sealing requirement as important precisely because it limits the Government's opportunity to alter the recordings.

The Government's view of the statute would create the anomalous result that the prosecution could delay requesting a seal for months, perhaps even until a few days before trial, without risking a substantial penalty. Since it is likely that a

district court would automatically seal the tapes,[3] there would be no "absence" of a seal, in the sense suggested by the Government, and § 2518(8)(a) would not come into play, even though the tapes would have been exposed to alteration or editing for an extended period of time. Such a view of the statute ignores the purposes of the sealing provision and is too strained a reading of the statutory language to withstand scrutiny. Like every Court of Appeals that has considered the question, we conclude that § 2518(8)(a) applies to a delay in sealing, as well as to a complete failure to seal, tapes.[4]

The Government's second contention is that even if § 2518 (8)(a)'s "satisfactory explanation" requirement applies to delays in sealing tapes, it is satisfied if the Government first explains *why* the delay occurred and then demonstrates that the tapes are authentic. This submission, however, also is not a sensible construction of the language of § 2518(8)(a) and would essentially nullify the function of the sealing requirement as a safeguard against tampering. The statute requires a *satisfactory* explanation, not just an explanation. It is difficult to imagine a situation in which the Government could not explain *why* it delayed in seeking to have tapes sealed. Even deliberate delay would be enough, so long as the Government could establish the integrity of the tapes; yet deliberate delay could hardly be called a satisfactory explanation. To hold that proof of nontampering is a substitute for a

---

[3] Nothing in § 2518(8)(a) itself clearly indicates whether district courts have any authority or discretion to deny a governmental request for sealing. The Government suggested at oral argument that district courts may have such authority but did not indicate that, if so, they have ever exercised it. Tr. of Oral Arg. 9. Respondents' countered that under the statute district courts have a mandatory duty to seal tapes, regardless of the timing of the request. *Id.*, at 36–37, 47.

[4] See, *e. g.*, *United States* v. *Gigante*, 538 F. 2d 502, 506–507 (CA2 1976); *United States* v. *Johnson*, 225 U. S. App. D. C. 33, 42, 696 F. 2d 115, 124 (1982); *United States* v. *Massino*, 784 F. 2d 153, 156 (CA2 1986); *United States* v. *Mora*, 821 F. 2d 860, 864–865 (CA1 1987).

satisfactory explanation is foreclosed by the plain words of the sealing provision.

It is true that offering to prove that tapes are authentic would be consistent with Congress' concern about tampering,[5] but even if we were confident that tampering could always be easily detected, we would not be at liberty to agree with the Government, for it is obvious that Congress had another view when it imposed the sealing safeguard.

The Government contends that it has an incentive to seal tapes immediately because otherwise, even under its proposed test, it will face lengthy pretrial suppression hearings in which it must establish the authenticity of tape recorded conversations. This is no more than a statement that only rarely would there be a delay and does not answer the issue posed where there is a delay that is not satisfactorily explained. Furthermore, the incentive argument is suspect since timely sealing, as the Government concedes, Tr. of Oral Arg. 10–11, 22–23, does not foreclose a challenge to authenticity, which in any event would require lengthy proceedings.

We conclude that the "satisfactory explanation" language in § 2518(8)(a) must be understood to require that the Government explain not only why a delay occurred but also why it is excusable. This approach surely is more consistent with the language and purpose of § 2518(8)(a).

Finally, we must consider whether the Government established good cause for the sealing delays that occurred in this case. The Government contends in this Court that its delays were the result of a good-faith, objectively reasonable misunderstanding of the statutory term "extension." According to

---

[5] It also is true that some Courts of Appeals have agreed with the Government in this respect. See, e. g., United States v. Falcone, 505 F. 2d 478, 484 (CA3 1974); United States v. Sklaroff, 506 F. 2d 837, 840–841 (CA5 1975); United States v. Cohen, 530 F. 2d 43, 46 (CA5 1976); United States v. Lawson, 545 F. 2d 557, 564 (CA7 1975); United States v. Diadone, 558 F. 2d 775, 780 (CA5 1977); McMillan v. United States, 558 F. 2d 877, 878–879 (CA8 1977); United States v. Angelini, 565 F. 2d 469, 471–473 (CA7 1977). As explained above, we read § 2518(8)(a) differently.

the Government, the attorney supervising the investigation and electronic surveillance of respondents believed that he was not required to seek sealing of the tapes until there was a meaningful hiatus in the investigation as a whole. In arguing that this understanding of the law was objectively reasonable, the Government relies primarily on two Second Circuit cases interpreting the statutory term "extension."

In one case, the Second Circuit held that an electronic surveillance order that was entered at least 16 days after a prior order had expired was to be regarded as an "extension" within the meaning of § 2518 because it "was clearly part of the same investigation of the same individuals conducting the same criminal enterprise" as was being investigated under the prior order. *United States* v. *Principie*, 531 F. 2d 1132, 1142, and n. 14 (1976), cert. denied, 430 U. S. 905 (1977). In a subsequent case, again involving a gap between the expiration of an order and an "extension," the court indicated that under the circumstances presented later orders could be deemed extensions of prior ones and stated that where an "intercept is of the same premises and involves substantially the same persons, an extension under these circumstances requires sealing only at the conclusion of the whole surveillance." *United States* v. *Scafidi*, 564 F. 2d 633, 641 (1977), cert. denied, 436 U. S. 903 (1978).

These cases do not establish that the Government's asserted understanding of the law in this case was correct; indeed, the Second Circuit's decision in this case indicates the contrary, but the cases do support the conclusion that the "extension" theory now pressed upon us was objectively reasonable at the time of the delays. Thus, we conclude that the excuse now advanced by the Government is objectively reasonable. In establishing a reasonable excuse for a sealing delay, the Government is not required to prove that a particular understanding of the law is correct but rather only that its interpretation was objectively reasonable at the time. To the extent the Second Circuit in this case required an ab-

solutely correct interpretation of the law, we think it held the Government to too strict a standard.

Nevertheless, we must remand this case for further proceedings. A "satisfactory explanation" within the meaning of § 2518(8)(a) cannot merely be a reasonable excuse for the delay presented at the appellate level. Rather, our review of the sufficiency of the Government's explanation for a delay should be based on the evidence presented and submissions made in the District Court. Therein lies the problem in this case. Whether the supervising attorney actually advanced the Government's "extension" theory in the District Court is not clear. Compare App. 4–5 (no sealing required for an ongoing investigation until a "meaningful hiatus" occurred), and id., at 26–27 (same), with id., at 36 (separate orders viewed as extensions of an interrelated investigation), and id., at 40 (same). Thus, even though the misunderstanding now pressed by the Government was objectively reasonable, that explanation is not "satisfactory" within the meaning of the statute unless it was relied on at the suppression hearing to explain the sealing delays. Because the Second Circuit did not address this threshold question, the case must be remanded for a determination whether the Government's explanation to the District Court substantially corresponds to the explanation it now advances.

The judgment of the United States Court of Appeals for the Second Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, with whom JUSTICE BLACKMUN joins, concurring.

I join the Court's opinion on the understanding that a "satisfactory explanation" within the meaning of 18 U. S. C. § 2518(8)(a) cannot merely be a reasonable excuse for the delay; it must also reflect the actual reason for the delay. Thus, as the Court today holds, an appellate court's review of

the sufficiency of the Government's explanation for a delay should be based on the findings made and evidence presented in the district court, rather than on a *post hoc* explanation given for the first time on appeal. See *ante*, at 267. With this understanding, I agree with the Court that this case should be remanded for a determination whether the Government's explanation to the District Court for the delay—not the explanation offered on appeal—meets the "satisfactory explanation" standard.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

The failure to comply with the sealing requirements of Title III was the unfortunate consequence of a Government lawyer's good-faith, but incorrect, understanding of the law. Whether such a mistake should constitute a "satisfactory explanation" for the failure, is, as both the District Court and the Court of Appeals recognized, a close question. Both of those courts resolved their doubts in favor of requiring strict compliance with a statute that was carefully drawn to protect extremely sensitive privacy interests. I think their resolution of the issue was correct.[1]

---

[1] The Court acknowledges that the prosecutor's understanding of the law was incorrect. *Ante*, at 266. However, the Court posits that, at the time of this investigation, it was "objectively reasonable" to interpret 18 U. S. C. § 2518(8)(a) to treat wiretap orders issued after an order covering the same suspects or locations expired as extensions of the earlier order. The legal sufficiency of this excuse, which relies on *United States* v. *Principie*, 531 F. 2d 1132 (CA2 1976), cert. denied, 430 U. S. 905 (1977), and *United States* v. *Scafidi*, 564 F. 2d 633 (CA2 1977), cert. denied, 436 U. S. 903 (1978), is debatable for three reasons.

First, *Principie* addressed a different provision of Title III, § 2518(8)(d), which requires written notice to suspects within 90 days of "the termination of the period of an order or extensions thereof." The *Principie* court treated a wiretap order that was issued four days after the expiration of an order directed at the same suspects at a previous location to be "an extension" within the meaning of this section. While enforcing notice under § 2518(8)(d) is informed by concerns for prematurely exposing an investiga-

The ordinary citizen is often charged with presumptive knowledge of laws even when they are complex and confusing. A similar presumption should apply to a federal prosecutor responsible for insuring that a prolonged and extensive program of electronic surveillance is conducted in compliance with the law. Moreover, when issues turn on the details of such an investigation—in this case involving 1,011 tapes made pursuant to 8 separate orders and 17 extensions—I believe we should give special deference to the consistent evaluations of the record by the District Court and the Court of Appeals. Chief Judge Oakes succinctly stated the concern that is decisive for me:

---

tion, sealing under § 2518(8)(a) carries no such risk. To the contrary, the underlying concern for the integrity of tapes and accurate recordkeeping supports sealing as early as possible. The *Scafidi* court applied *Principie*'s definition of extension to a sealing delay, but held alternatively that if the later orders could not be considered extensions, the reasons for the brief delay met the rigorous reading of § 2518(8)(a) established in *United States* v. *Gigante,* 538 F. 2d 502 (CA2 1976).

Second, because a judge of the United States District Court for the District of Puerto Rico issued the surveillance and sealing orders, the District Court below held that the "law of the first circuit controlled where a material difference exists between the sealing requirements in the first and second circuits." *United States* v. *Gerena,* 695 F. Supp. 649, 657–658 (Conn. 1988). The First Circuit has not applied *Principie* to subsequent orders in Title III notice or sealing cases. It has construed § 2518(8)(a)'s sealing requirement strictly and identified a series of factors to measure the sufficiency of an explanation of delay. *United State* v. *Mora,* 821 F. 2d 860 (CA1 1987). Both the District Court and Second Circuit used the *Mora* factors in sustaining the suppression of the Levittown and Baja Vega tapes. 695 F. Supp., at 657–658; 875 F. 2d 17, 22–23 (CA2 1989).

Finally, the general rule—as stated in the treatise used by the prosecutor in this case—is that "[a]lthough Title III delays the sealing and notice deadline when the initial warrant is extended, it does not postpone those deadlines when a new warrant is obtained on a different phone or premises." C. Fishman, Wiretapping and Eavesdropping § 190 (1978); *id.,* at 282, n. 8 (acknowledging *Principie* as an exception to *notice* deadlines in a footnote). Prosecutor Bove did not recall what cases he consulted, but did recall using the Fishman treatise. App. 35, 40, 42–44.

"We think that unfortunately the failure to seal the Levittown tapes here resulted from a disregard of the sensitive nature of the activities undertaken. The danger here is, of course, that today's dereliction becomes tomorrow's conscious avoidance of the requirements of law. The privacy and other interests affected by the electronic surveillance statutes are sufficiently important, we believe, to hold the Government to a reasonably high standard of at least acquaintance with the requirements of law." 875 F. 2d 17, 23 (CA2 1989).[2]

Accordingly, while I agree with the Court's rejection of the Government's construction of § 2518(8)(a), I would affirm the judgment of the Court of Appeals.[3]

---

[2] Cf. *United States* v. *Giordano*, 416 U. S. 505, 527 (1974) ("Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device").

[3] If a "satisfactory explanation" *did* exist, I would agree that a remand to determine that it was in fact "the actual reason for the delay" would be required. *Ante*, at 267 (O'CONNOR, J., concurring).