**UNITED STATES of America, Plaintiff,**

v.

**John M. RIGGI, John J. Riggi, Vincent Riggi, Salvatore Timpani, and Girolamo Palermo, Defendants.**

**Crim. No. 89–380.**

United States District Court,
D. New Jersey.

May 23, 1990.

Fred Wyshak, Jr., Sp. Asst. U.S. Atty., Kevin E. McCarthy, Asst. U.S. Atty., Brian D. Gillet, Sp. Asst. U.S. Atty., Newark, N.J., for plaintiff.

Cathy Waldor, Montclair, N.J., for defendant John M. Riggi.

Richard H. Kress, Westfield, N.J., for defendant Vincent Riggi.

Harvey Weissbard, Weissbard & Wiewiorka, West Orange, N.J., for defendant James Palermo.

Andrew Ruotolo, Mella & Ruotolo, Mountainside, N.J., for defendant John J. Riggi.

John McDonald, Somerville, N.J., for defendant Salvatore Timpani.

## OPINION

WOLIN, District Judge.

On April 23, 1990, this Court heard oral argument on the motion of all defendants' for suppression of certain wiretap evidence on the ground that the Government had failed to satisfy the sealing requirements of 18 U.S.C. § 2518(8)(a).[1]  At that point, pursuant to binding precedent in this Circuit, the Court denied the motion with the proviso that defendants might reassert their application depending upon the outcome of a then-pending appeal to the United States Supreme Court on a similar issue in a different action, and upon further development of the factual record at trial. On April 30, 1990, the United States Supreme Court decided the appeal in the case of *United States v. Ojeda Rios,* —— U.S. ——, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990).  The Supreme Court's decision altered the applicable law in this Circuit.  No longer is the trial court's inquiry limited to

1. Section 2518(8)(a) provides in relevant part: *Immediately upon the expiration of the period of the order* [authorizing electronic surveillance], *or any extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his di-* rections....  The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom[.]

the purity of the tapes' integrity. *United States v. Falcone*, 505 F.2d 478, 484 (3d Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975). Now a delay in sealing the tapes, or resealing the tapes as occurred here, without a satisfactory explanation is, in and of itself, a sufficient reason to suppress the evidence obtained therefrom. Consequently, the Court has reopened the suppression motion of defendants. As contemplated by the Supreme Court's opinion, this Court conducted an extensive factual inquiry and additional oral argument on May 21, 1990.

## I. BACKGROUND

This intercept, conducted in Daphne's Restaurant, located within the Sheraton Hotel, 901 Spring Street, Elizabeth, New Jersey, was first authorized by Order filed September 6, 1985. Thereafter, on October 11, 1985, November 8, 1985, December 9, 1985, January 9, 1986, February 7, 1986, March 10, 1986, April 11, 1986, May 12, 1986, and June 12, 1986, Orders were issued authorizing thirty-day extensions of the electronic surveillance. The last extension, on June 12, 1986, expired on July 12, 1986. The tapes recorded pursuant to that series of Orders were all judicially sealed as an original matter before or by July 11, 1990. As an aside, the Court notes that the tapes obtained from the electronic surveillance from late 1985 until the middle of 1986 were submitted by the Government for judicial sealing immediately following the expiration of the Order which authorized the surveillance *without regard to* whether an extension of the prior order had been obtained. Through this abundance of caution, the Government exceeded the requirements of the sealing statute and now

finds itself immersed in this unsealing controversy.[2] Defendants do not challenge the original sealing of the audio and video tapes (collectively, "tapes") obtained by the Government pursuant to a certain series of Orders authorizing electronic surveillance of John M. Riggi and others as violative of 18 U.S.C. § 2518(8)(a).

What defendants challenge is the Government's delay in resealing certain tapes which had been unsealed at various times by the Court for the purposes of copying and enhancement. By Order filed November 21, 1985, Judge Clarkson S. Fisher ordered that certain "original tape recordings ... be unsealed and maintained in the custody of the Federal Bureau of Investigation so that enhanced duplicates may be made of the originals."[3] The Judge further ordered that,

after the enhanced duplicates have been made, the said original tape recordings be promptly returned to the United States District Court for the District of New Jersey for resealing and maintenance in the same manner as directed in the previous November 12, 1985, sealing Order filed in this matter.

The sealing Order of November 12, 1985 provided that the tapes sealed were to "be placed in the custody of Susan Coppola, Tape Custodian, Newark Office of the Federal Bureau of Investigation, who shall immediately place said [audio] tape recordings and video tape recordings in a secure facility under the supervision and control of the Federal Bureau of Investigation[.]"

By Order filed January 16, 1986, Judge Fisher ordered that certain tapes previously judicially sealed be unsealed for the purpose of producing enhanced duplicates of the original tape recordings.[4] The Judge

---

2. The statute does not require sealing after every 30–day period. The AUSA assigned to this intercept testified that she sealed at the end of every 30–day order as a courtesy to the Court and for administrative convenience. Otherwise, the tapes in issue would have been sealed with all of the recordings upon the expiration of the last extension (July 12, 1986). Unsealing orders were only necessary due to the government's policy of sealing after every 30–day period. Government's Memo, May 14, 1990, at 4.

3. The tape recordings which the November 21, 1985 Order unsealed were:

October 25, 1985    NKDNJ 483 (Reel 5)
October 25, 1985    NKDNJ 484 (Reel 5)
November 7, 1985   NKDNJ 483 (Reel 14)

Court Exhibit 1 at tab 3.

4. The tape recordings which the January 16, 1986 Order unsealed were:

November 20, 1985   NKDNJ 484 (Reel 23)
November 26, 1985   NKDNJ 482 (Reel 27)

ordered that after the enhancement process was completed the original tapes were to be promptly returned to the Court "for resealing and maintenance in the same manner as directed in the December 9, 1985, and January 9, 1986, sealing Orders filed in this matter." Those two Orders provided for the same arrangements as did the November 12, 1985 Order.

On September 10, 1986, the Government made application to this Court to judicially reseal the tapes which were subject to the unsealing Orders of November 21, 1985 and January 16, 1986 ("the 1985–1986 tapes"). The Government recited the manner in which the enhancement process was carried out and annexed, as an exhibit, a table on which was shown the dates on which each original tape was sent to the laboratory at FBI headquarters in Washington, D.C. and the dates on which each original tape was returned to the Newark Office of the FBI after the enhancement process had been completed.[5] The application stated that upon the return of each tape to Newark, the tape was returned to the custody of the Tape Custodian in Newark and maintained in the manner prescribed in the original sealing Orders. The table indicates that the last tape from the November 21, 1985 Unsealing Order was returned to Newark on January 31, 1986.

| | | |
|---|---|---|
| November 26, 1985 | NKDNJ 484 | (Reel 27) |
| December 6, 1985 | NKDNJ 483 | (Reels 35, 35A) |
| December 6, 1985 | NKDNJ 484 | (Reel 35) |
| December 11, 1985 | NKDNJ 485 | (Reel 21) |
| December 12, 1985 | NKDNJ 485 | (Reel 22) |
| December 18, 1985 | NKDNJ 482 | (Reel 43) |
| December 20, 1985 | NKDNJ 482 | (Reel 45) |
| December 20, 1985 | NKDNJ 483 | (Reel 45) |
| December 20, 1985 | NKDNJ 484 | (Reel 45) |
| December 20, 1985 | NKDNJ 485 | (Reel 28) |
| December 23, 1985 | NKDNJ 485 | (Reel 29) |
| December 26, 1985 | NKDNJ 483 | (Reel 48) |
| December 26, 1985 | NKDNJ 485 | (Reel 31) |
| December 27, 1985 | NKDNJ 485 | (Reel 32) |
| January 6, 1986 | NKDNJ 485 | (Reel 37) |
| January 7, 1986 | NKDNJ 483 | (Reel 55) |
| January 7, 1986 | NKDNJ 485 | (Reel 38) |

Court Exhibit 1 at tab 7.

5. Court Exhibit 1 at tab 8.

6. It is undisputed that the returned original tapes were replaced in the same storage box as when they were initially sealed. This box was in a locked room within another room guarded

The last four tapes from the January 16, 1986 Unsealing Order were returned to Newark on April 21, 1986.[6] All of the tapes which had been unsealed pursuant to the Orders of November 21, 1985 and January 16, 1986 were judicially resealed by Order filed September 10, 1986.[7]

On February 17, 1987, an Order was filed by Chief Judge Fisher authorizing the unsealing of all original tape recordings previously sealed by the Court under Miscellaneous Docket Number 85–334 (the tapes recorded at Daphne's Restaurant) in order to copy the tapes and permit their enhancement ("the 1987 tapes").[8] The Order provided that:

[A]ll original recordings physically unsealed as the result of this Order shall be resealed as soon as practicable by attorneys of the United States Attorney's Office and Newark Strike Force either personally or through a designee and that all original recordings be re-presented to this Court for resealing in their entirety when copying and enhancement functions have been fully accomplished or, in any event, not later than June 1, 1987.

On June 17, 1987, Chief Judge Fisher entered an Order resealing the tapes.[9] Based upon the affidavit of Assistant United States Attorney Judy G. Russell (the "Russell Affidavit"), the Court found "that the

by an alarm and administered by an evidence technician who adhered to a rigid chain of custody procedure.

7. The tapes were stored at the FBI headquarters in Newark. Chief Judge Fisher signed the resealing order at his Chambers in Trenton. He declined the AUSA's offer to make the tapes available to him. Although it was argued that these tapes have never been judicially resealed, such an argument ignores the resealing order signed by Chief Judge Fisher on June 17, 1987. Moreover, neither statutory direction nor custom or usage mandate that any particular sealing method be employed.

8. Although the order was filed on February 17, 1987, it was actually signed February 13, 1987 and will be referred to as the "February 13, 1987 order."

9. The Court has been advised that the unsealing and resealing orders concerning the 1987 tapes involve 39 boxes containing 854 reels of recordings.

**1414**

delay in resealing from June 1 to June 17, 1987, was the result of excusable error." In summary, the Russell Affidavit states that on May 20, 1987, AUSA Russell was informed that it was necessary for her to travel to India as part of her official duties, leaving on May 29, 1987. The affidavit continues that between May 20 and May 29, AUSA Russell obtained numerous clearances, medical assistance, travel documents and attempted to dispose of other pending matters in her office. AUSA Russell states that "[t]he fact that these tapes were to have been presented for resealed [sic] by June 1, 1987, escaped my notice in the press of matters before my departure." When AUSA Russell returned to the office on June 15, 1987, she realized that she had failed to make arrangements for someone else to present the tapes for resealing in her absence.[10] She then relates that she spent June 16th checking the chain of custody of the tapes in her absence. On June 17, 1987, the application to reseal the tapes was presented and granted.

## II. DISCUSSION

■ Defendants have moved to suppress the tapes discussed above on the ground that the Government violated 18 U.S.C. § 2518(8)(a) by failing to immediately reseal tapes which had been unsealed by the Court for the purposes of copying and enhancement when the respective procedures had been completed. Previously, this Court was bound by caselaw in the Third Circuit which held that any delay in the judicial sealing of tapes would be excused upon the presentation by the Government of the reason for the delay and a showing that the integrity of the tapes had not been compromised. *United States v. Vastola*, 899 F.2d 211, 241 (3d Cir.1990), *United States v. Falcone*, 505 F.2d 478, 484 (3d Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1338–39, 43 L.Ed.2d 432 (1975). The recent Supreme Court decision in the *Ojeda Rios* case has altered the standards which

this Court must apply to the instant motion.

The Third Circuit first reached the issue of suppression under 18 U.S.C. § 2518(8)(a) in the *Falcone* case. In that case, wiretap evidence was not properly sealed, as an initial matter, as required by section 2518(8)(a). *Falcone*, 505 F.2d at 483. The Circuit Court found that the function of the sealing requirement was "to maintain the integrity of the tapes for evidentiary purposes." *Id.* at 484. Accordingly, the Court found that "[t]he crucial factor, however, is the integrity of the tapes themselves." *Id.* The Court held that "where the trial court has found that the integrity of the tapes is pure, a delay in sealing the tapes is not, in and of itself, sufficient reason to suppress the evidence obtained therefrom." *Id.* In the *Vastola* case the Third Circuit dealt with "the government's responsibility in handling tapes subsequent to the execution of an unsealing order." *Vastola*, 899 F.2d at 240. The Court found that Congress' "overriding legislative concern quite clearly was to prevent the admission of wiretap evidence which has been subject to tampering." *Id.* at 240–241. Although the Court recognized that other Circuit Courts had held to the contrary, the Court held that even potential violations of section 2518(8)(a) which occurred subsequent to an unsealing order would be analyzed under the standard set out in *Falcone*. *Id.* at 241. The Court went on to find that because the tapes had not been altered, no violation of section 2518(8)(a) had occurred.

In *Ojeda Rios* the Supreme Court, disagreed with the rationale of *Falcone* and *Vastola* and held, instead, that "the 'satisfactory explanation' language in § 2518(8)(a) must be understood to require that the Government explain not only why a delay occurred but also why it is excusable." *Ojeda Rios*, 110 S.Ct. at 1850. The Supreme Court disapproved of the standards of several circuits which had only

10. AUSA Wyshak testified that AUSA Russell agreed to handle the unsealing and resealing of the tapes since he was a new appointee to the office and unfamiliar with this District's administrative procedures. Although he was aware of unsealing and resealing requirements, he was unaware of the requirement to reseal no later than June 1, 1987, since AUSA Russell had never shown him a copy of the February 13, 1987 order. Moreover, he did not learn of the June 1, 1987 outside resealing date until June 16, 1987.

required the Government to provide an explanation and proof that the tapes had not been altered. *Id.* The Court stated that "[t]o hold that proof of nontampering is a substitute for a satisfactory explanation is foreclosed by the plain words of the sealing provision." *Id.* The Court held that section 2518(8)(a) required that the Government establish good cause for sealing delays that occur, that the Government establish it on the evidence presented and submissions made in the District Court, and that the explanation be the actual cause of the delay. *Id.* at 1850–51. It is under this standard that this Court must analyze the sealing delays in the case at bar.

As an initial matter, this Court determines that it would be jurisprudentially myopic to hold that the Supreme Court's opinion in *Ojeda Rios* is limited to initial judicial sealing and precludes consideration of situations pertaining to judicial unsealing and resealing. *Vastola*, 899 F.2d at 240. Accord *United States v. Angiulo*, 847 F.2d 956, 977 (1st Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988) (" 'the standards applicable in delay-of-sealing cases ... are relevant to the unsealing problem' "). Therefore, the Court will apply the standards set out in *Ojeda Rios* to the instant matter. Since the defendants' contentions involve two separate and distinct instances of alleged failure to conform to the statutory mandate, it is appropriate for the Court to separately discuss and analyze the circumstances surrounding the 1985–1986 tapes and the circumstances surrounding the unsealing and resealing of the 1987 tapes.

### A. *The 1985–1986 Tapes*

■ As a threshold matter the Court must address whether there was a delay in judicially resealing the tapes unsealed by the November 21, 1985 and January 16, 1986 Orders, and if a delay is found, its duration must be determined. The last tape from the November 21, 1985 Unsealing Order was returned to Newark on January 31, 1986. The last four tapes from the January 16, 1986 Unsealing Order were returned to Newark on April 21, 1986. All of the tapes which had been unsealed pursuant to the Orders of November 21, 1985 and January 16, 1986 were judicially resealed by Order filed September 10, 1986.

At oral argument, Counsel for defendants suggested that the Court should measure the delay in resealing each individual tape which had been unsealed from the date on which that particular tape had been returned to the FBI tape custodian in Newark from the laboratory at FBI Headquarters. The unsealing Orders provide that "after the enhanced duplicates have been made, the said original tape recordings be promptly returned to the United States District Court for the District of New Jersey for resealing[.]" November 21, 1985 Order, p. 2, January 16, 1986 Order, p. 2. Although a strained reading of this language might support defendants' suggestion, a reasonable interpretation of the language would indicate that the obligation to judicially reseal the original tapes arose after all of the enhanced duplicates had been made. Furthermore, defendants' suggestion, if adopted, would pose an unreasonable administrative burden on the Government and on the Courts by requiring individual unsealing and resealing for each reel of recorded surveillance in every instance.

■ The Government argues that there was no delay at all in resealing the tapes and that, in the alternative, the duration of the delay should be calculated from the date of the expiration of the last wiretap extension order which would be July 12, 1986. The Government contends that their obligation to reseal the tapes after the enhancement had been completed was fulfilled by the return of the original tapes to the FBI tape custodian in Newark, who placed the tapes back in the secure room with all of the other judicially sealed tapes. The Government argues that this action satisfied the requirement of the unsealing Orders that the tapes be returned and maintained in the manner mandated by prior sealing Orders. From the testimony adduced at the hearing it is clear, and the Court so finds, that the tapes were scrupulously maintained in the secure manner which was required by the sealing Orders

of this Court. However, the Orders specifically state that the tapes must be returned to the District Court to be resealed. From the reference to the Court itself, it can only be inferred that the Order mandated judicial resealing prior to the return of the tapes to the secure FBI facility for maintenance in accordance with the previous sealing orders. The return of the tapes to the secure facility, without more, does not constitute judicial resealing pursuant to § 2518(8)(a).

■ In the alternative, the Government suggests that the Court measure the delay in resealing from the date on which the last extension of the wiretap expired. The Government argues because § 2518(8)(a) only requires judicial sealing at "the expiration of the period of the [wiretap] order, or extensions thereof," the Government had no obligation to seal the tapes at issue in this motion until July 12, 1986. While the Court is not unsympathetic to the argument that suppression for failure to promptly reseal tapes which were not statutorily required to be sealed in the first place may be a harsh remedy, when the Government tactically assumed that burden it placed itself within the ambit of the statute. The conduct that the Government engaged in thereafter must be evaluated according to the standards of that statute. Accepting the argument of the Government and holding that the obligation to reseal did not arise until July 12, 1986 would make a nullity of all the prior sealing and unsealing orders of the Court. To sanction such an occurrence would detract from the dignity and respect accorded to judicial orders. Pursuant to the Orders which the Government chose to obtain, the Government's obligation to reseal the tapes unsealed under each order arose after the enhanced duplicates had been made from those tapes. The Government's obligation to reseal the tapes unsealed by the November 21, 1985 Order arose sometime after the last tape from that batch was returned to Newark on January 31, 1986. The Government's obligation to reseal the tapes unsealed by the January 16, 1986 Order arose sometime after the last four tapes from that batch were returned to Newark on April 21, 1986.

All of the 1985–1986 tapes were judicially resealed by Order filed September 10, 1986. Therefore, the duration of the delay in resealing the tapes unsealed by the November 21, 1985 Order was slightly more than seven months. The duration of the delay in resealing the tapes unsealed by the January 16, 1986 Order was almost five months.

Having determined that a delay occurred in the prompt resealing of the 1985–1986 tapes, the Court must now determine whether the Government has established a satisfactory explanation for the delay on the evidence presented and submissions made before this Court. *Ojeda Rios*, 110 S.Ct. at 1850–51. This explanation must also be the actual cause of the delay. *Id.* In its own analysis of the factual situation in the *Ojeda Rios* opinion, the Supreme Court looked to see whether the Government had been able to establish "good cause." *Id.* at 1850. The Supreme Court's conclusion that the Government's explanation was "objectively reasonable" was enough to establish a reasonable excuse for the sealing delay. The Supreme Court found that "[i]n establishing a reasonable excuse for a sealing delay, the Government is not required to prove that a particular understanding of the law is correct but rather only that its interpretation was objectively reasonable at the time." *Id.* at 1851. The Court will now discuss and analyze the testimony presented at the hearing in order to determine if the Government has established a reasonable excuse.

■ The Government contends that a combination of several individual objectively reasonable explanations caused the lengthy delays in resealing. The Government also points to testimony and other submissions that evidence its good faith, the lack of any prejudice to the defendants and the concomitant lack of any benefit to the Government. While the Court finds that the actions of the Government were performed in good faith, this is not the test of the sufficiency of an explanation. The explanation must be objectively reasonable in order to be satisfactory. The fact that the delays caused no prejudice to the defen-

dants or benefit to the Government only factor into this Court's analysis when the Court considers whether the Government frequently and purposefully disregarded the mandates of the statute in this manner. Based on the testimony given, the Court finds that the actions which led to the delays were not intentional and that these delays were not common occurrences. In addition, although certainly no longer a dispositive factor, based on the testimony and submissions the Court finds that the Government has carried its burden of showing that the integrity of the tapes had been scrupulously maintained throughout the time period relevant to this motion and that the potential for tampering was slight.[11]

█ Through testimony and other submissions the Government attempted to establish several explanations which had combined to create the delay in resealing the 1985–1986 tapes. The Court holds that it is not necessary that the satisfactory explanation for resealing delays be only one explanation. Nothing prohibits the Government from establishing a reasonable excuse for resealing delays by patching several explanations which, together, create a satisfactory explanation for the delay.

The Government asserts that the then recent transfer of custodianship of the recordings produced by electronic surveillance from the Clerk of the District Court's office to the FBI contributed to the delay in resealing. The testimony of Susan Coppola, the Tape Custodian from the Newark office of the FBI, Special Agent Sturm of the FBI, Special Agent Edwards of the FBI, and Assistant U.S. Attorney ("AUSA") Barbara Miller established that prior to the transfer of custodianship (1) it was only possible to remove and return tapes to the Clerk's Office with an order of the Court and (2) it was necessary for a case agent or an AUSA to physically walk a tape over to the Clerk's Office in order to return it. Those witnesses also established that after the transfer had been made, the procedure was altered for returning judicially unsealed tapes when the enhancement process had been completed. The procedure was streamlined and more efficient. When a tape that had been previously unsealed and sent to the FBI laboratory for copying and enhancement was returned, the original and all enhanced duplicates was returned directly to the Tape Custodian in Newark. The original was replaced in the same box in the secure area from where it had been removed, one duplicate was filed in another room within the secure area, and how ever many duplicates remained were forwarded to the case agent or the AUSA in charge of the investigation. Thus, no longer did the case agent or the AUSA receive the original tape to return it to the repository.

█ AUSA Miller testified that one of the ways she could determine whether all the originals were back was when she had received the enhanced duplicate made from each one.[12] She testified that, with the intercept ongoing, she continuously received original tapes. Both AUSA Miller and Special Assistant U.S. Attorney Fred Wyshak testified that sometime after the unsealing orders at issue were obtained the Government began to send "duplicate originals"[13] to Washington, D.C. to be enhanced rather than the judicially resealed originals. She testified that she intended to reseal the 1985–1986 tapes when all the

---

**11.** For example, in his testimony Special Agent Sturm of the FBI explained that the usual method of sending original tapes to the FBI laboratory in Washington, D.C. consisted of placing the physically sealed evidence envelope (an FD504) inside another envelope which was then sealed and placed within another envelope which was then sealed. A routing form was then placed on the outer envelope and the whole package was sent by registered mail, on the same day on which it was delivered to the mail room, to Washington, D.C.

**12.** Another way to determine whether the original tapes had been returned was to be so advised by Case Agent Edwards. This conversation did not occur. See testimony of Edwards, *infra*, at 19–20.

**13.** The Government actually made two original recordings of the electronic surveillance. One of the originals was designated the "original" and judicially sealed. The other was used to create transcripts and for other purposes. This copy was designated the "duplicate original."

enhancements had been made but that she lost track of which enhanced tapes had been created from the judicially unsealed tapes rather than the duplicate originals. She testified that it was only after she began to prepare the complete case record for transfer to AUSA Russell that she realized that certain tapes had never been judicially resealed. It was at this point she determined it would be administratively prudent, as well as in keeping with her original intentions, to have the tapes judicially resealed as soon as possible. To the extent AUSA Miller's testimony indicated that she believed that the terms of the unsealing orders did not require the tapes be judicially resealed and that she believed that the return of the tapes to the FBI secure facility satisfied the terms of the orders, the Court dismisses those beliefs as unreasonable and finds that they fail to support the establishment of a reasonable excuse.[14]

The testimony of Susan Coppola, Special Agent Sturm and Special Agent Edwards supported AUSA Miller's testimony that she lost track of the progress of the 1985–1986 tapes. Susan Coppola testified that she believed that placing the original tape back in its box in the secured room, where only judicially sealed tapes were kept, indicated that it was "resealed." She also testified to the elaborate and comprehensive procedures that were undertaken with respect to any of the tapes in that room, whether they had been judicially sealed or unsealed. Both Special Agents Sturm and Edwards testified that they believed that AUSA Miller was responsible for taking any legal actions that were required concerning the sealing of tapes. Special Agent Edwards testified that it was Special Agent Sturm who was responsible for keeping track of which original tapes had been through the enhancement process. Special Agent Sturm testified that his re-

sponsibility mainly consisted of creating transcripts from the tapes and that he was unaware of any resealing obligations. Both Agents testified that neither had any previous experience with unsealing and resealing tapes during an electronic surveillance. AUSA Miller also testified that prior to this investigation she had never dealt with an unsealing and resealing situation. She testified that she had read the jurisprudence of this Circuit, which at that time had consisted of the *Falcone* opinion, but had found no guidance in the area of resealing. She testified that, at the time, she was unaware of any custom or usage in this district concerning the practice.[15]

The Court finds that the Government's multi-faceted explanation for the delay in resealing the 1985–1986 tapes was satisfactory. Considering the circumstances of this case, including the inexperience of the agents and the AUSA in the area of resealing, the absence of any controlling jurisprudence, and the explanations of each participant in the delay, the Court concludes that the reasons given were objectively reasonable. Taken together, these actions created the delay in resealing. In combination, the Court finds that they are a reasonable excuse for the Government's failure to promptly reseal the 1985–1986 tapes.

### B. *The 1987 Tapes*

■ The Government does not contest the fact that there was a delay in the prompt judicial resealing of the 1987 tapes. Pursuant to the February 13, 1987 Order:

"all original recordings physically unsealed as the result of this Order shall be resealed as soon as practicable by attorneys of the United States Attorney's Office and Newark Strike Force either personally or through a designee and that all original recordings be re-presented to this Court for resealing in their entirety when copying and enhancement func-

---

**14.** The unsealing order on page 2, paragraph 4, specifically required resealing by the United States District Court. Ex. 1 at tabs 3 and 7.

**15.** Her testimony more pointedly indicated that there was a lack of custom or usage in this district concerning the practice of sealing tapes. During her inventory of the Clerk's vault preced-

ing transfer of original tapes to the FBI, she testified that she observed tapes in untaped boxes, sealed boxes with judicial signatures on the box but not on the sealing tape, and boxes of tapes where the judicial signature was placed across the sealing tape.

tions have been fully accomplished or, in any event, not later than June 1, 1987." February 13, 1990 Order, p. 2. Chief Judge Fisher judicially resealed the tapes on June 17, 1987. The Government contends that the duration of the delay was 17 days, from June 1, the final date in the Order, to June 17, the date the tapes were resealed. Defendants' contend that the delay should be measured from the date on which the last of the tapes which were provided to Paul Ginsberg to have enhanced duplicates made were returned to the Government. The Court has been informed by Special Agent Sturm that SAUSA Wyshak signed for those tapes on April 30, 1987. The February 13, 1987 Order uses the disjunctive in referring to the final date on which the tapes must be returned to the Court to be resealed. Defendants would ask the Court to read the order to mandate the tapes must be resealed when all of the enhanced duplicates have been made, *but* no later than June 1, 1987. However, the Court believes that a sinew of flexibility in the muscle of the order exists. A reasonable reading of the order would be to give the Government the option to wait until the June 1, 1987 deadline to have the tapes resealed. In addition, the February 13, 1987 Order did not only allow for enhancement, it also provided for the copying of tapes. It would be too narrow a reading of the Order to require that the Government return the tapes to be resealed only after the enhancement functions had been completed. Therefore, the Court finds that the duration of the delay in resealing the 1987 tapes was 17 days.

The Court will now consider whether the Government has established a satisfactory explanation for this delay by the testimony of SAUSA Wyshak and the submission of the Russell Affidavit. The substance of the Russell Affidavit has been related above. While the Court notes that Chief Judge Fisher concluded the actions of AUSA Russell were the result of excusable error, no transcript, or other certification, has been supplied to this Court demonstrating the factual underpinnings or legal basis of the Chief Judge's conclusion. Accord-

ingly, this Court will not be bound by the prior determination.

SAUSA Wyshak testified that AUSA Russell was preoccupied with her impending trip to India in the later part of May, 1987. He testified that he was unaware of the June 1, 1987 deadline in the February 13, 1987 Order because he had never been provided with a copy of the Order by AUSA Russell and had been assured by AUSA Russell that, because he was new to the district, she would handle the administrative details concerning the unsealing of the 1987 tapes. SAUSA Wyshak testified that when AUSA Russell returned on June 16, 1987 she told him for the first time that the tapes needed to be resealed and that she had called Chief Judge Fisher and arranged for him to judicially reseal tapes. SAUSA Wyshak testified that he was perturbed because he had not been able to finish the process of selecting all the tapes from which he wished to have enhanced duplicates made. Although AUSA Russell erred by failing to make arrangements for someone else to handle the matter of resealing in her absence, considering the circumstances surrounding her failure, the Court finds that it was excusable. The testimony of SAUSA Wyshak establishes that no one else was in a position to know of the error or to take steps to correct it. The Court concludes that the Russell Affidavit and SAUSA Wyshak's testimony establish a satisfactory explanation for the 17 day delay in the resealing of the 1987 tapes.

## III. CONCLUSION

Electronic surveillance through an intercept is an extraordinary and highly intrusive investigatory method. To insure the integrity of recordings and to minimize the potential for their alteration, Congress enacted legislation that requires timely judicial sealing. 18 U.S.C. § 2518(8)(a). The presence of a seal or a satisfactory explanation of its absence is a prerequisite to the use of this type of evidence.

The focus of this opinion has been the requirement of a satisfactory explanation in the absence of a timely resealing.

**1420**

Through an analysis of testimony, affidavits and exhibits, this Court is satisfied that, in accord with an objectively reasonable standard, satisfactory explanations for a delay in resealing exist for both the 1985–1986 tapes and the 1987 tapes. By engaging in this type of inquiry, the Court has acknowledged the will of Congress and has complied with its statutory mandate.

An appropriate order is attached.

### ORDER

In accordance with an opinion of the Court filed herewith,

It is on this 23rd day of May, 1990

ORDERED that defendants' motion to suppress certain recordings of electronic surveillance resealed by Orders of this Court dated September 10, 1986 and June 17, 1987 for failure to be promptly resealed in accordance with 18 U.S.C. § 2518(8)(a) is denied.