# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-3361

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM CONEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 99 CR 945—**James B. Zagel**, *Judge.*

_____

ARGUED FEBRUARY 25, 2005—DECIDED MAY 11, 2005

_____

Before BAUER, POSNER, and RIPPLE, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant was convicted by a
jury of federal drug offenses and sentenced to 240 months
in prison. The evidence that the government presented at
trial included recordings of telephone calls intercepted
pursuant to orders issued by the chief judge of the district
court under Title III, the federal wiretap statute, 18 U.S.C.
ch. 119. The contents of the intercept "shall, if possible" (it
was possible here), "be recorded." 18 U.S.C. § 2518(8)(a).
"Immediately upon the expiration of the period [covered by

the intercept order] . . . such recordings shall be made available to the judge issuing such order and sealed under his directions . . . . The presence of the seal . . ., or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents" of the intercept. *Id.* The purpose of these provisions is to prevent the government from editing or otherwise tampering with the recordings. *United States v. Ojeda Rios*, 495 U.S. 257, 263 (1990); *United States v. Jackson*, 207 F.3d 910, 915-18 (7th Cir.), vacated in part on other grounds, 531 U.S. 953 (2000); *United States v. Angelini*, 565 F.2d 469, 471 (7th Cir. 1977); *United States v. Gomez*, 67 F.3d 1515, 1524 (10th Cir. 1995).

There were two intercept orders. The intercepts made pursuant to the first order were duly tape recorded and the tapes were immediately submitted to and sealed by the chief judge. Their admissibility is not questioned. The question is the admissibility of the tapes made pursuant to the second intercept order (which was actually an extension of the first, but nothing turns on that detail).

The second order expired on October 10, 1997, but the tapes made pursuant to it were not submitted to the chief judge and sealed until the 20th. The government points out that only five days in this ten-day period were business days, but that is irrelevant, since the prosecutors have access to their offices even when the building in which their offices are located is closed. During the ten days, the tapes were sitting in an evidence bag, readily accessible to anyone in the office in which the bag was stored. The bag was closed, but it was not locked or sealed, or in a safe or, so far as appears, in any other locked container. Because such tapes are accessible on weekends and holidays by the very agents who might have the inclination and ability to tamper with them, it seems to us—we cannot find a case that discusses the issue—that the relevant period for assessing whether the

statute's requirement of "immediate" sealing was violated is the full ten days, as assumed in *United States v. Cline*, 349 F.3d 1276, 1283-84 (10th Cir. 2003), and *United States v. McGuire*, 307 F.3d 1192, 1202-03 (9th Cir. 2002).

Ten days is too long to be thought "immediate." "The term '[i]mmediately' means that the tapes should be sealed either as soon as practical after the surveillance ends or as soon as practical after the final extension order expires." *United States v. Williams*, 124 F.3d 411, 429 (3d Cir. 1997). That shouldn't require more than a couple of days at most. *United States v. Wilkinson*, 53 F.3d 757, 759-60 (6th Cir. 1995); *United States v. Wong*, 40 F.3d 1347, 1375 (2d Cir. 1994); *United States v. Pedroni*, 958 F.2d 262, 265 (9th Cir. 1992). So the second set of tapes was admissible only if the government had, as the district judge presiding at the defendant's trial ruled, a satisfactory explanation for the delay in submitting the tapes to the chief judge for sealing.

But is that a judgment to be made by this court de novo, that is, without according any deference to the district court's decision? Or should we defer, and therefore reverse only if we think it clear that the decision was wrong? The courts to have addressed the issue have split two to one in favor of de novo review, compare *United States v. Sawyers*, 963 F.2d 157, 159 (8th Cir. 1992), and *United States v. Maldonado-Rivera*, 922 F.2d 934, 949-50 (2d Cir. 1990), with *United States v. Wilkinson*, *supra*, 53 F.3d at 760, but none of the cases offers a reason for its conclusion. We side with the minority. The question what is a "satisfactory explanation" is fact-specific, as we are about to see, rather than being governable by a rule that an appellate court might lay down. The application of a broad standard such as negligence or possession, or in this case satisfactoriness, to the specific facts of a case is usually and we think rightly treated for purposes of appellate review as a factual rather

than a legal determination. *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002) ("satisfactory"); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998) (negligence); *United States v. Wyatt*, 102 F.3d 241, 246-48 (7th Cir. 1996) (possession); *Autocephalous Greek-Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 289 (7th Cir. 1990) (due diligence); *Harrison v. United States*, 284 F.3d 293, 297 (1st Cir. 2002) (negligence); *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992) (en banc) (possession).

Two assistant U.S. attorneys had handled the phase of the criminal investigation that involved the interceptions. One of them, Ross, was on vacation on October 10, returning on the 17th. She stated in an affidavit (below) that she had expected the other assistant U.S. attorney working on the case, Salovaara, to submit the tapes to the chief judge immediately after the expiration of the period of the intercept on October 10. Salovaara failed to do this, however, as Ross learned when she returned to work on the 17th. Ross prepared the sealing application that same day, but according to her affidavit was unable, because of scheduling problems involving either the chief district judge or the FBI's case agent, to submit the application and the tapes until the 20th, and they were sealed that day.

The possibility of a statutory violation as a result of the delay in the sealing of the tapes did not surface until almost three years later, when the defendant moved to suppress the tapes. Ross and Salovaara submitted affidavits. Neither had a clear recollection of the episode. Each said she had thought the other would take care of the matter, though Salovaara was notably vague in her recollection. She did add that she might have believed erroneously that Ross was returning to work on the 13th rather than the 17th, but she wasn't sure.

The defendant argues that an explanation for a delay in sealing that does not establish a good reason for the delay—that instead reveals that the delay was the result of carelessness, as in this case—can never be deemed satisfactory. There are hints of such a position in some cases, *United States v. Ojeda Rios, supra*, 495 U.S. at 265; *United States v. Jackson, supra*, 207 F.3d at 916; *United States v. Quintero*, 38 F.3d 1317, 1328-30 (3d Cir. 1994), and in the insistence in all cases that to be satisfactory the explanation must be "objectively reasonable." *United States v. Ojeda Rios, supra*, 495 U.S. at 265-67; *United States v. Jackson, supra*, 207 F.3d at 916; *United States v. Williams, supra*, 124 F.3d at 429; *United States v. Wilkinson, supra*, 53 F.3d at 760; *United States v. Carson*, 969 F.2d 1480, 1487 (3d Cir. 1992). So strict a rule would, by increasing the penalty for careless delay, encourage greater care and thus better compliance with the goal of the statute, which is to minimize the likelihood of tampering with electronic evidence. But the rule would be too strict and is not compelled by the language or purpose of the statute.

The term "satisfactory explanation" is neither self-defining nor defined in the statute. As a matter of semantics it could just mean believable or it could, as the defendant argues, mean that the explanation established that the delay had been justifiable. In choosing between these possibilities we are guided by the statutory objective. We ask what should be deemed "satisfactory" in the context of a statute aimed at preventing government tampering with electronic evidence. The answer is that an explanation is satisfactory if, in the circumstances, it dispels any reasonable suspicion of tampering. The believability of the explanation is critical, and depends in part simply on its plausibility: the more plausible, the more believable. The length of the delay is relevant as well, and also the nature of the crime, including its notoriety or the notoriety of the defendant, and thus the

pressure on the government to obtain a conviction; and also the importance of the tapes to the government's case.

Suppose the sealing of the tapes had been delayed for months, the explanation offered for the delay was that the assistant U.S. attorney had accidentally dropped the tapes in a birdbath and had spent the intervening months trying to dry them out with a defective hair dryer, the defendant was the FBI's Public Enemy Number One, and the tapes were the only evidence of his guilt. The explanation would be unsatisfactory. But the present case is remote from our hypothetical case. The delay was much shorter. The mixed-signal explanation given by the assistant U.S. attorneys is plausible, and the fact that their affidavits are vague is readily accounted for by the lapse of time between the incident and the making of the affidavits, rather than being a sign of evasiveness. The case was a routine drug prosecution of a defendant of no particular notoriety and there is nothing to suggest that either of the assistant U.S. attorneys would have had a motive for jeopardizing their careers by tampering with the tapes or lying in their affidavits. The assistant U.S. attorneys were aware of their statutory duty and had established a procedure for complying with it. There is no suggestion of a pattern, either in the Office of the U.S. Attorney for the Northern District of Illinois or in the Justice Department generally, of failure to comply with the requirement of immediate judicial sealing of tapes of Title III intercepts. Indeed, we have found no recent cases in which the Department was found to have tampered with tapes of Title III intercepts.

Relative to the statutory purpose, we conclude, the explanation offered for the lapse was satisfactory, and so the district judge was correct to deny the motion to suppress. There was neglect, but it was harmless and therefore, while it was not justifiable, it was excusable. Cf. *Pioneer Investment*

*Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 394-95 (1993). But for future reference we note that the government would be in a stronger position if, back in 1997, the assistant U.S. attorneys had memorialized the circumstances giving rise to the delay in the sealing of the tapes.

The only other issue—and it isn't really an *issue*—concerns the sentence. The sentence was imposed before the Supreme Court's decision in the *Booker* case, and the government concedes that in light of that decision the sentence violates the Sixth Amendment. Because the district judge indicated that if his hands weren't tied by the federal sentencing guidelines he would have given the defendant a shorter sentence, we remand for resentencing. See *United States v. Paladino*, 401 F.3d 471, 482 (7th Cir. 2005).

A true Copy:

       Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*