UNITED STATES of America

v.

John A. GOTTI, Joseph D'Angelo, Michael Yannotti, and Louis Mariani, Defendants.

No. 04 CR.690(SAS).

United States District Court, S.D. New York.

April 15, 2005.

**216**

Michael G. McGovern, Victor Hou, Joon H. Kim, Assistant United States Attorneys, New York, New York, for the Government.

Marc Allan Fernich, Law Office of Marc Fernich, New York, New York, Jeffrey Lichtman, Law Office of Jeffrey Lichtman, New York, New York, Barry Levin, Garden City, New York, Diarmuid White, White & White, New York, New York, Charles F. Carnesi, Garden City, New York, for Defendants.

*MEMORANDUM OPINION & ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

The Court held a conference in this case on April 12, 2005, to hear oral arguments on various motions made by the defendants. My decisions as to the majority of these motions follows.

Defendant John A. Gotti, Jr. ("Gotti") has moved for the following relief: (1) a bill of particulars; (2) a *Franks* hearing regarding an April 2004 application to extend a wiretap order; (3) dismissal of some or all of the charges in the pending indictment on the grounds that they are barred by the terms of his 1999 plea agreement; and (4) suppression of electronic surveillance evidence.

Defendant Joseph D'Angelo ("D'Angelo") has moved for the following relief: (1) severance; (2) dismissal of all counts of the indictment on statute of limitations grounds; (3) a bill of particulars; (4) change of venue; (5) disclosure of various materials; (6) an order requiring the Bureau of Federal Prisons to preserve all tape recordings of telephone conversations as well as any other recordings, pen registers, and visiting logs relating to incarcerated individuals who were debriefed by the Government concerning the charges in this indictment; (7) an order directing the Government to provide defendants access to all physical evidence in its possession; (8) disclosure of the medical records of the Government's cooperating witness Frank Fappiano; (9) a *Simmons* hearing regarding Curtis Sliwa's prior identification of D'Angelo; and (10) leave to make certain motions *in limine*.

Defendant Michael Yannotti ("Yannotti") has moved for the following relief: (1) dismissal of Count One of the indictment on the grounds that it violates the statute of limitations; (2) dismissal of Racketeering Act Six of Count One as unrelated to the charged racketeering enterprise; (3) severance; and (4) suppression of the fruits of electronic surveillance.

Defendant Louis Mariani ("Mariani") has moved to sever his trial from his co-defendants'.

## II. THE INDICTMENT

On July 21, 2004, a grand jury in the Southern District of New York returned an eight-count indictment against defendants Gotti, D'Angelo, Yannotti, and Mariani. The indictment charges D'Angelo and Mariani in all eight counts, and Yannotti in two of the eight counts.

Count One alleges that all four defendants participated in a racketeering enterprise known as the Gambino Organized Crime Family of La Cosa Nostra ("Gambino Crime Family") in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Count One further alleges that the defendants committed the following eleven racketeering acts: (1) conspiracy to kidnap and murder, kidnaping, and attempted murder of Curtis Sliwa on or about June 19, 1992 [Gotti, D'Angelo, and Yannotti]; (2) conspiracy to murder and murders of Robert Arena and Thomas Marenga on or about January 26, 1996 [Yannotti]; (3) conspiracy to murder and murder of Edward Garafalo in or about July and August 1990 [D'Angelo]; (4) conspiracy to murder and attempted murder of Victim # 1 in or about 1990 and 1991 [Gotti]; (5) conspiracy to murder and attempted murder of Victim # 2 in or about 1991 [Gotti]; (6) attempted murder of Victim # 3 in or about 1987 [Yannotti]; (7) conspiracy to commit securities fraud and mail and wire fraud from in or about 1995 up through and including in or about 2002 [Gotti, D'Angelo, and Mariani]; (8) conspiracy to extort and extortion of construction contractors from in or about 1991 up through and including in or about 2002 [Gotti, D'Angelo, and Mariani]; (9) loansharking from in or about 1991 up through and including in or about 2002 [Gotti, D'Angelo, and Mariani]; (10) loansharking from in or about 1993 up through and including in or about 2002 [Yannotti]; and (11) illegal gambling from in or about the mid–1990s up through and including in or about May 2002 [D'Angelo].

Count Two charges all four defendants with participating in a racketeering conspiracy from in or about the mid–1980s up through and including in or about 2004 also in violation of RICO. The aforementioned racketeering acts are realleged in connection with Count Two. Counts Three through Seven respectively charge Gotti, D'Angelo, and Mariani with (1) conspiracy to commit securities fraud, (2) fraud in connection with the offer and sale of securities, (3) fraud in connection with the purchase and sale of securities, (4) mail fraud, and (5) wire fraud from in or about 1995 up through and including 2002. Count Eight charges Gotti, D'Angelo, and Mariani with conspiracy to extort and extortion of construction contractors from in or about 1991 up though and including 2002.

## III. DISCUSSION

### A. Motions to Sever

 D'Angelo, Yannotti, and Mariani have each moved for separate trials.[1] Federal Rule of Criminal Procedure 14 provides in relevant part: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the Government, the court may . . . sever the defendants' trials." "The decision whether to sever is committed to the sound discretion of the trial judge."[2] "There is a preference in the federal system for the joint trial of defendants indicted together, making severance inappropriate unless a joint trial would compromise a trial right of the moving defendant or prevent the jury from making a reliable judg-

---

1. For the reasons stated on the record at the April 12th conference, Mariani's motion for a separate trial is denied. See 4/12/05 Transcript ("Tr.") at 81–82.

2. *United States v. Blount,* 291 F.3d 201, 209 (2d Cir.2002) (quotation marks omitted).

ment about guilt or innocence."[3] Put another way, "a defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."[4]

D'Angelo contends that he is entitled to severance "because of the nature of the charges against others in this case and the likelihood of spillover prejudice."[5] However, in view of the fact that the indictment in this case charges D'Angelo in every count and alleges that he committed crimes of violence, including murder, there is little risk of prejudicial spillover from a joint trial. In addition, the notoriety of the Gotti name is irrelevant to the question of severance because a searching voir dire and emphatic jury instructions will ensure that Gotti and his co-defendants receive a fair trial before an impartial jury. Thus, D'Angelo has failed to demonstrate that a joint trial will compromise any trial right or prevent the jury from making a reliable judgment and, consequently, his motion for a separate trial is DENIED.

Yannotti argues that Gotti's notoriety mandates a separate trial. As stated earlier, this contention is without merit, and Yannotti's motion to sever is also DENIED.

## B. Motions to Dismiss on Statute of Limitations Grounds

As noted earlier, D'Angelo and Yannotti have made motions to dismiss on statute of limitations grounds. For the reasons stated on the record at the April 12th conference, both motions to dismiss on these grounds are DENIED as being premature.[6]

## C. Motions for a Bill of Particulars

Gotti and D'Angelo have each requested a bill of particulars. For the reasons stated on the record at the April 12th conference, these motions are GRANTED in part and DENIED in part.[7]

## D. Gotti's Other Motions

### 1. Request for a *Franks* Hearing

#### a. Background

■ Gotti has also moved for a hearing pursuant to *Franks v. Delaware*[8] regarding an affidavit submitted by Conrad on April 14, 2004, in support of an extension of an order pursuant to 18 U.S.C. § 2518 authorizing the interception of oral communications between Gotti, who was incarcerated at F.C.I. Ray Brook ("Ray Brook"), and a number of subjects. Relying on this affidavit, the Honorable Lawrence Kahn, a United States District Judge in the Northern District of New York, authorized the extension of the wiretap order.

#### b. Applicable Law

■ Under *Franks*, a hearing is required to determine the validity of a warrant if the defendant makes a substantial

---

3. *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir.1995).

4. *United States v. Walker*, 142 F.3d 103, 110 (2d Cir.1998).

5. Memorandum of Law in Support of Defendant Joseph D'Angelo's Pretrial Motions ("D'Angelo Mem.") at 21.

6. *See* Tr. at 72–73.

7. *See id.* at 58–63. I add one clarification to the April 12th ruling. The Government need not provide the name of every alleged victim of the securities fraud and mail and wire fraud charged in Racketeering Act Seven and Counts Three through Seven. Rather, where appropriate, the Government should identify classes of victims, such as shareholders of a particular security.

8. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

preliminary showing that (1) the application contains false statements, (2) the false statements were made intentionally or with reckless disregard for the truth, and (3) there is no probable cause independent of those false statements.[9] *Franks* has also been extended to cover material omissions in addition to material misstatements.[10] "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory.... There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof" in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses."[11]

### c. Analysis

■ Gotti maintains that the April 14, 2004, affidavit contains intentional and/or reckless misstatements and omissions that go to the heart of the Government's probable cause showing in support of the wiretap extension. As an initial matter, the Government responds that Gotti's motion is inadequate in form because he has not submitted any affidavits from witnesses with personal knowledge of the relevant facts or offered any explanation for his failure to do so. Nonetheless, I find that Gotti's attack on Conrad's April 2004 affidavit is sufficient as to form. Gotti raises five alleged omissions or misrepresentations in the affidavit. In each case, Gotti compares Conrad's summaries of conversations intercepted under the Ray Brook wiretap with excerpts from the actual transcripts of those conversations. Because these comparisons are sufficient to enable this Court to determine whether Conrad misrepresented in his April affidavit the substance of previously intercepted conversations, affidavits or other sworn statements of witnesses are unnecessary.

As noted above, Gotti alleges that the affidavit contains five separate misstatements or omissions. *First,* Gotti contends that Conrad misrepresented the substance of an intercepted conversation between Gotti and Steven Dobies that occurred on February 1, 2004, in the regular visiting room at Ray Brook. Conrad's affidavit states, in relevant part, that Gotti and Dobies "discussed the cooperation with authorities of Michael DiLeonardo. GOTTI stated that if DiLeonardo is telling authorities the truth, the Gottis are finished."[12] The transcript itself, which Gotti quotes verbatim, tells a different story. What Gotti actually said is that if Michael DiLeonardo is telling the truth, he will tell the authorities that "the Gottis are finished."[13] While it is clear that Conrad misrepresents Gotti's actual statement, I hesitate to find at this time that Conrad made this misrepresentation intentionally or with a reckless disregard for the truth. It appears from the number of unintelligible words indicated in the transcript that it can be difficult to interpret precisely what the targets are saying. Therefore, before I can determine whether the misrepresentation was made intentionally or recklessly, as opposed to merely by mistake, I would have to review the recording personally.

*Second,* Gotti contests the following statement by Conrad concerning a meeting

---

9. *See id.* at 155–56, 98 S.Ct. 2674.

10. *See United States v. Canfield,* 212 F.3d 713, 717–18 (2d Cir.2000); *United States v. Bianco,* 998 F.2d 1112, 1125 (2d Cir.1993).

11. *Franks,* 438 U.S. at 171, 98 S.Ct. 2674.

12. 4/15/04 Affidavit of Special Agent Gerard Conrad ("Conrad Aff."), Ex. E to 2/15/05 Affidavit of Marc Fernich ("Fernich Aff."), Counsel to Gotti, ¶ 127.

13. Memorandum of Law in Support of Defendant John A. Gotti's Second Set of Pretrial Motions ("Gotti Mem. 2"), at 21.

between Gotti and John Ruggiero: "Because of the extremely poor quality of the interceptions, I was not able to follow the conversations between GOTTI and RUGGIERO. Given the previous interceptions I have reviewed and the source information I possess, however, I believe that the conversations concerned criminal activity." [14] Gotti fails to show how this statement is in any way false. Conrad makes clear that he is merely expressing his belief concerning the content of the conversation.

*Third,* Gotti contests Conrad's description of a meeting between Gotti and Steven. Dobies on December 5, 2003, in which they discuss an FBI interview with John Aruanno. When questioned about an alleged extortion payment to Gotti, Aruanno purportedly told the FBI that it was in fact a Christmas gift. Conrad reports that Gotti insisted that Aruanno gave him the money as a loan and that Gotti instructed Dobies to warn Aruanno not to lie to investigators. [15] Conrad further reports that Gotti also instructed Dobies to tell Aruanno to change his statement to the FBI with the help of Rehbock. [16] Gotti now maintains that Conrad's affidavit deliberately omits that the loan was "a matter of public record," which Gotti reported in a financial statement in his 1998 case before Judge Parker. [17] Even if one assumes that this omission is significant, Gotti has not shown that it was deliberate or reckless. Gotti argues that because he mentioned during the intercepted conversation that the loan was reflected in "the paperwork," Conrad should have found the 1998 court filing in which a debt to "John Aruana" is listed. I conclude, however, that Conrad's failure to do so was not deliberate or reckless. [18]

*Fourth,* Gotti alleges that Conrad's description of a meeting between Gotti and Michael DiLeonardo's teenaged son omits "a wholly innocent explanation" for the timing of the visit. [19] In his affidavit, Conrad states:

> Based on my review of the visitor logs, I learned that DiLeonardo's teenage son was brought to F.C.I. Ray Brook on or about Febraury 9, 2003, to meet with GOTTI. Prior to that meeting, based on my review of F.C.I. Ray Brook's records, DiLeonardo's son had not visited GOTTI before. It is my belief that GOTTI was attempting to use GOTTI's son in order to convince DiLeonardo not to cooperate with the Government, and that RUGGIERO had visited DiLeonardo's ex-wife for the same reason. [20]

Gotti argues that the recording of a conversation between Gotti and Ruggiero concerning that visit indicates that DiLeonardo's son had not visited earlier because his parents disapproved of the chaperone who was proposed for such a visit. However, the conversation between Gotti and Ruggiero is so disjointed that it is not entirely clear what the two men are saying. In any case, that Conrad failed to include this explanation for the timing of the visit does not constitute a reckless disregard for the truth.

14. Conrad Aff. ¶ 63.

15. *See id.* ¶¶ 104–05.

16. *See id.* ¶ 105.

17. Gotti Mem. 2 at 22. *See also* Gotti's Declaration of Defendant Personal Financial Statement, No. 98 Cr. 42(BDP), Ex. B. Fernich Aff., at 5.

18. *See United States v. Dale,* 991 F.2d 819, 844 (D.C.Cir.1993) ("[I]n general, the failure to investigate fully is not evidence of an affiant's reckless disregard for the truth.").

19. Gotti Mem. 2 at 23.

20. Conrad Aff. ¶ 58.

*Fifth,* Gotti alleges that Conrad misrepresents a conversation between Gotti and Ruggiero on March 23, 2003, in which they discuss Tommy Cacciopoli, a reputed member of the Gambino Crime Family. Conrad construed the discussion as follows: "GOTTI is indicating that he is willing to let Cacciopoli think that RUGGIERO is being kept away from other Gambino family members by GOTTI, when this is not the case." [21] Gotti now argues that the transcript of the conversation "makes it crystal clear" that this was indeed the case.[22] In fact, it is not crystal clear,[23] and in any case, Gotti fails to show how the error is significant.

In sum, none of the false statements or omissions pointed out by Gotti warrant a *Franks* hearing because none of them—with the possible exception of the first—were deliberate or reckless. In any case, Conrad's affidavit presents ample evidence to support a probable cause determination even if *all* of the five statements or omissions are purged from the wiretap application. Gotti appears to recognize this when his attorney writes that the affidavit "arguably establishes adequate probable cause even without these egregious errors and omissions." [24] Therefore, Gotti's motion for a *Franks* hearing is DENIED.

## 2. Motion to Dismiss Charges on the Grounds That They Violate a Prior Plea Agreement

Gotti has moved to dismiss some or all of the charges in the pending indictment on the grounds that his 1999 plea agreement gives him closure as to all investigations pending at the time of that agreement. In the alternative, he has moved to exclude from his upcoming trial all information in the Government's possession at the time of the plea. I heard oral argument on these motions on April 12, 2005, and then ordered the parties to make best efforts to obtain affidavits from Gerald Shargel, counsel to Gotti at the time of the plea, and Mark Pomerantz, the former chief of the Criminal Division in the U.S. Attorney's Office in the Southern District of New York. I reserve decision pending my review of these affidavits, should the parties obtain them.

## 3. Motion to Suppress Electronic Surveillance Evidence

Gotti has also moved to suppress intercepted recordings of conversations between Gotti and Richard Rehbock, Esq., at Ray Brook that were recorded pursuant to a court-authorized wiretap. Gotti contends that there was no probable cause to support the authorization of the wiretap under section 2518 of Title 18 and, furthermore, that the Government failed to adequately minimize these conversations with the result that allegedly privileged communications were intercepted and produced to the prosecutors in this case. At the conference, the Government agreed to inform the Court within two weeks which, if any, of these conversations it plans to offer into evidence.[25] Accordingly, I reserve decision on the motion to suppress pending the Court's receipt of that information.

## E. D'Angelo's Other Motions

## 1. Change of Venue

■ D'Angelo argues that a change of venue is necessary because of "the incredible media scrutiny and publicity in this

---

21. *Id.* ¶ 54.

22. Gotti Mem. 2 at 25.

23. According to the transcript, Ruggiero said to Gotti at one point: "I told him, you know what I told him, let them, let them know that, let them think that in their minds." *Id.*

24. *Id.*

25. *See* Tr. at 5.

case, including the publicity generated by a material witness, Curtis Sliwa."[26] Under Federal Rule of Criminal Procedure 21(a), a transfer of venue is warranted "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." "[T]o prevail on a motion under Rule 21(a), the defendant must show a 'reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.'"[27]

■ D'Angelo has not demonstrated that it is reasonably likely that pretrial publicity will prevent a fair trial. *First,* D'Angelo overstates the impact of Curtis Sliwa's comments on the potential jury pool. As noted in my decision dated December 3, 2004, regarding Gotti's motion for a gag order, Curtis Sliwa's radio program reaches on average 150,000 listeners a week.[28] That is a small percentage of the population of the Southern District of New York, which is nearly five million. *Second,* D'Angelo points to a mere handful of references to this trial in New York newspapers.[29] While there can be no doubt that the Gotti name is notorious in the community, it is likely to be equally well known throughout the country, thanks in part to the reality television program "Growing Up Gotti." As I stated in my opinion of December 4, 2004, a searching voir dire and emphatic jury instructions can adequately ensure that an impartial jury is selected. Therefore, I conclude that a change of venue is not warranted at this time. Accordingly, D'Angelo's motion is DENIED.

## 2. Disclosure of *Brady* and Other Materials

The Government is aware of its obligation to produce *Brady* materials as such material comes to light. I urge the Government not to play too close to the line, but rather to submit to the Court for *in camera* review any material about which it has any doubt.

The Government has proposed a schedule for the production of the other requested materials, parts of which I adopt and other parts I revise as follows: (1) the Government shall provide 3500 and *Giglio* impeachment materials to the defendants "on a rolling basis beginning four weeks prior to trial";[30] (2) proposed 404(b) materials shall be produced no later than four weeks prior to trial; (3) with respect to expert disclosures, the Government shall identify the areas in which experts will be used no later than four weeks prior to trial, and the names, CVs, and reports of experts shall be produced two weeks prior to trial; and (4) with respect to audio and video recordings, the Government shall produce a list identifying precisely which tapes it expects to introduce at trial no later than three weeks prior to trial.

To the extent the Government seeks to introduce at trial tape recorded conversations involving D'Angelo, he may move *in limine* to suppress such recordings and/or move for an audibility hearing.

26. D'Angelo Mem. at 22.

27. *United States v. Maldonado–Rivera,* 922 F.2d 934, 966–67 (2d Cir.1990) (quoting *Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)).

28. *See United States v. Gotti,* No. 04 Cr. 690, 2004 WL 2757625, at *4 (S.D.N.Y. Dec.3, 2004).

29. *See* Ex. D to 12/7/04 Affidavit of Barry Levin (compiling copies of newspaper articles referring to Gotti).

30. Government's Memorandum of Law in Opposition to Joseph D'Angelo's Pre–Trial Motions ("Govt. D'Angelo Opp.") at 27.

### 3. Proposed Order Requiring the Bureau of Prisons to Preserve Tape Recordings and Records Relating to Incarcerated Cooperating Witnesses

D'Angelo seeks an order requiring the Bureau of Federal Prisons (the "BOP") to preserve:

> all tape recordings of telephone conversations and/or any other tape recording[s], pen registers and visiting logs related to incarcerated cooperating witnesses and other[s] who have been debriefed by the government concerning the allegations in the instant indictment ... including but not limited to all tape recordings of telephone conversations and/or any other tape recording[s], pen registers and visiting logs related to ... Frank Fappiano and Michael DiLeonardo.[31]

At the April 12th conference, the Government informed D'Angelo and the Court that it has already requested that the BOP preserve these tapes and that it believes the BOP has complied with this request.[32] Because the proposed order appears to be unnecessary, it is DENIED without prejudice.

### 4. D'Angelo's Request for Access to Physical Evidence

D'Angelo seeks access to physical evidence in the Government's possession. Because the Government has stated on the record that it will allow D'Angelo to review such evidence—including surveillance photographs—upon request,[33] an order is unnecessary and the motion is accordingly DENIED without prejudice.

### 5. Disclosure of Frank Fappiano's Medical Records

D'Angelo seeks an order compelling the Government to provide to the defendants the medical records of the cooperating witness Frank Fappiano ("Fappiano"). D'Angelo contends that as a result of an auto accident that occurred in 1991, Fappiano takes medications that may affect his ability to recollect events accurately. The Government responds that there is no basis for this assertion. Although I will not grant D'Angelo's request at this time, I nonetheless ORDER the Government to provide a list of medications Fappiano takes now and took at the time of the events about which he will testify.

### 6. Proposed Hearing Regarding Curtis Sliwa's Identification of D'Angelo

D'Angelo requests a hearing to determine whether law enforcement's photographic identification procedures would taint any in-court identification of D'Angelo by Curtis Sliwa. The Government responds that Sliwa never identified D'Angelo from any photographic array and, in any case, the Government does not intend to ask Sliwa to make an in-court identification of D'Angelo during the trial.[34] The motion for a hearing is, therefore, DENIED.

### 7. Permission to Make Certain Motions *in Limine*

D'Angelo has reserved his right to move *in limine* to suppress any co-conspirators' statements that the Government may seek to introduce pursuant to Federal Rule of Evidence 801(d)(2)(E). D'Angelo may so move, if appropriate.

---

**31.** D'Angelo Mem. at 14.

**32.** *See* Tr. at 65.

**33.** *See id.* at 71.

**34.** Govt. D'Angelo Opp. at 30.

### F. Yannotti's Other Motions

#### 1. Motion to Dismiss Racketeering Act Six

Yannotti contends that Racketeering Act 6, which charges Yannotti alone with the attempted murder of Victim # 3, should be dismissed because the facts alleged in the indictment do not demonstrate that this attempted murder was related to the RICO enterprise. The case Yannotti cites in support of this proposition, *United States v. Bruno*,[35] is inapposite. In that case, the Second Circuit found *after trial* that the evidence demonstrating relatedness was insufficient.[36] It is premature to address the sufficiency of the evidence at this time. As I noted during the conference in regard to the motions to dismiss on statute of limitations grounds, a court must accept all factual allegations in the indictment as true.[37] The present indictment alleges that Racketeering Act Six is part of a "pattern of racketeering activity" as defined by the RICO Act.[38] Racketeering Act Six is, therefore, sufficient on its face.[39] Accordingly, the motion to suppress is DENIED.

#### 2. Motion to Suppress the Fruits of Electronic Surveillance

 In his moving papers, Yannotti argues that the fruits of a court-authorized wiretap of a cellular phone that he used while in Florida in 1996 should be suppressed on four grounds: (1) there was insufficient probable cause to support the authorization; (2) the affidavit supporting the authorization contained knowing and material falsehoods, warranting a hearing pursuant to *Franks v. Delaware;* (3) the Government failed to amend the wiretap application to include Yannotti as a potential interceptee; and (4) government misconduct with respect to the evidence safe "in which the tapes were likely secured" raises questions concerning the authenticity of the wiretap tapes.

##### a. Background

On April 12, 1996, the Honorable William J. Zloch, a United States District Judge in the Southern District of Florida, issued an order authorizing the interception of wire communications to and from a certain cellular telephone number in order to gather evidence against Nicholas Corozzo ("Corozzo"), allegedly a capo in the Gambino Family, and others concerning various crimes, including loansharking.[40] In addition to Corozzo, the order named as potential interceptees Lenny DiMaria, Ralph Davino, Sidney Alwais, David Alwais, Louis Scida, and Anthony Ruggiano, Jr., as well as "others yet unknown."[41] The order expired after thirty days, and the Government did not seek an extension.[42]

Special Agent Alan Hogan submitted a sworn affidavit in support of the Government's application for the wiretap order

---

35. 383 F.3d 65 (2d Cir.2004).

36. *See id.* at 84.

37. *See United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir.1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

38. Indictment ¶ 13.

39. *See Alfonso*, 143 F.3d at 776 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.").

40. *See* Order Authorizing the Interception of Communications, Misc. No. 96–2–WJZ, Ex. A to Affidavit of Joseph R. Corozzo ("Corozzo Aff."), former counsel to Yannotti.

41. *See id.* at 1.

42. *See* Memorandum of Law in Support of Defendant Yannotti's Pre–Trial Motions ("Yannotti Mem.") at 2.

in which he stated that a confidential source, who had been providing reliable information for over a year concerning the Gambino Crime Family's and, particularly, Corozzo's alleged criminal activities in Florida, furnished Corozzo a cellular telephone.[43] It was this phone that was the target of the wiretap order. Corozzo stopped using the phone after a few days, and it came into the possession of Yannotti, who started using it on April 13, 1996, the day after the order was issued.[44] In its ten-day status report to Judge Zloch, the Government reported that the phone was in Yannotti's possession and stated that he was an associate in the Gambino Crime Family who reported directly to Corozzo.[45] The ten-day report also stated that Yannotti would soon become a "made" member of the Gambino Crime Family.[46] Finally, the ten-day report indicated that the Government would name Yannotti as an interceptee if it sought an extension of the wiretap order.[47]

### b. There Was Probable Cause to Support the Wiretap Application

 Yannotti contends that the affidavit supporting the wiretap order fails to establish probable cause. The Second Circuit has stated that:

> a federal court may issue a wiretap order under 18 U.S.C. § 2518 if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap.[48]

The standard for probable cause applicable to section 2518 is the same as that for an ordinary search warrant.[49] Probable cause for a search warrant is established if the totality of the circumstances indicate a probability of criminal activity.[50] A judicial officer's prior determination of probable cause is accorded "great deference." [51] "The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." [52]

Special Agent Hogan's affidavit provided sufficient evidence for Judge Zloch to have determined that each of the requirements for authorizing a wiretap under section 2518 was satisfied. *First*, the affidavit establishes probable cause to believe that Corozzo and the other individuals named in the wiretap order were committing, on a continuing basis, multiple crimes—including defrauding purchasers of temporary phone cards, illegally trafficking in untaxed cigarettes, loansharking, interstate

---

43. *See* Affidavit of Special Agent Alan John Hogan ("Hogan Aff."), Ex. B to Corozzo Aff., ¶¶ 5, 77.

44. *See* Ten Day Progress Report, Ex. C to Corozzo Aff., ¶ 4. The phone may have been in the possession of Eileen Casotto, reputedly a girlfriend of Corozzo, before Yannotti began using it. *See id.* ¶ 9.

45. *See id.* ¶¶ 4–5.

46. *See id.* ¶ 5.

47. *See id.* ¶ 6.

48. *United States v. Diaz,* 176 F.3d 52, 110 (2d Cir.1999).

49. *See id.*

50. *See id.*

51. *Id. Accord Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

52. *United States v. Wagner,* 989 F.2d 69, 72 (2d Cir.1993).

transportation of stolen property, and money laundering—that required them to communicate with one another. *Second,* the affidavit states that Corozzo told the confidential source that he believed the FBI was monitoring his current cellular telephone. According to the affidavit, Corozzo then asked the source to obtain a new cellular telephone for Corozzo's use while in Florida. This raises the inference that Corozzo intended to use the phone to discuss criminal activities without fear of being monitored by the FBI. *Third,* the affidavit indicates that the confidential source supplied the phone that was to be the target of the wiretap to Corozzo. Thus, the affidavit provided a sufficient basis for Judge Zloch to determine that probable cause existed justifying a wiretap order.

### c. A *Franks* Hearing Is Not Warranted

 Yannotti next argues that the affidavit submitted to Judge Zloch contained "material omissions and distortions" that warrant suppression of the fruits of the wiretap or, in the alternative, a hearing pursuant to *Franks v. Delaware.* However, Yannotti has failed to make a sufficient preliminary showing to warrant suppression or a hearing.[53]

Yannotti contends that the following statement contained in the affidavit is false: "[the confidential source] furnished the target cellular telephone to Corozzo for his use in conducting the criminal activities referred to herein."[54] According to Yannotti, this statement regarding Corozzo's intended use of the phone is "mere speculation, unsupported by the evidence."[55] It is not mere speculation, however. On the contrary, Corozzo's alleged conversation with the confidential source about his suspicion that the FBI was monitoring his current cell phone suggests that Corozzo subsequently asked the source for a cell phone because he wanted a phone that could safely be used to conduct criminal activities. Thus, information provided by the confidential source supports Special Agent Hogan's *opinion* concerning Corozzo's intended use of the phone. In any case, Yannotti has offered no proof of his own that the statement was false. At the very least, one would expect Yannotti to have submitted in support of his allegation a sworn statement from Corozzo himself. This Yannotti has not done. In short, Yannotti has made no showing whatsoever that the statement was false and, furthermore, that it was made intentionally or with reckless disregard for the truth. Consequently, a *Franks* hearing is not warranted.

### d. The Government Was Not Required to Amend the Wiretap Application to Include Yannotti as a Potential Interceptee

Yannotti next contends that because Corozzo handed the phone over to him little more than a day after the wiretap order was granted, the Government was required to seek to amend the order.[56] During the April 12th conference, Yannotti's

---

**53.** As stated earlier, a *Franks* hearing is required to determine the validity of a warrant if the defendant makes a substantial preliminary showing that (1) the application contains false statements, (2) the false statements were made intentionally or with reckless disregard for the truth, and (3) there is no probable cause independent of those false statements. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674.

**54.** Hogan Aff. ¶ 77.

**55.** Yannotti Mem. at 16.

**56.** During oral argument, Yannotti raised the possibility that he had not received the phone from Corozzo directly, but rather from a woman, identified as Eileen Casotto in the ten-day report, who used the phone on April 13, 2004. *See* Tr. at 98.

new counsel elaborated on this argument, stating that the Government's continued interception of calls after Corozzo no longer possessed the phone was akin to a general warrant and, therefore, constituted an unreasonable search.[57] Because the Court has not had an opportunity to consider this new argument fully, I reserve decision on this ground for suppression.[58]

#### e. Yannotti's Claim of Government Misconduct Is Without Merit

Finally, Yannotti accuses the Government of mishandling "the evidence safe in which the tapes [of the wiretapped conversations] were likely secured."[59] The Government calls this accusation nonsense. Yannotti bases his allegation on the indictment of an FBI agent for false statements during an investigation in which he was suspected of stealing money from an FBI evidence vault in North Dade, Florida. The Government proffers that an AUSA in the Southern District of Florida who is familiar with the investigation has explained that the wiretap tapes in this case were not under the control of the FBI agent in question. The Government states unequivocally that Yannotti's concerns are, therefore, groundless.[60]

Although I conclude that this proffer resolves this issue, I deny this ground for suppression without prejudice. At the April 12th conference, the Government agreed to provide to Yannotti the sealing orders with respect to these recordings.[61]

Yannotti may renew his motion to suppress on this ground if the orders reveal that the tapes were improperly sealed.[62]

#### f. Summary

For the foregoing reasons, Yannotti's first two grounds for suppression of the fruits of the wiretap are DENIED and the fourth is DENIED without prejudice. The Court reserves its decision on Yannotti's third ground for this relief.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motions are GRANTED in part and DENIED in part. I have also reserved decision on the following motions: (1) Gotti's motion to dismiss some or all of the charges of the present indictment on the grounds that they are barred by his 1999 plea agreement; (2) Gotti's motion to suppress electronic intercepts of conversation he had with Rehbock at F.C.I. Ray Brook; and (3) Yannotti's motion to suppress the fruits of a wiretap of a cellular telephone he used in 1996 on the grounds that the wiretap was an unreasonable search.

SO ORDERED.

---

57. *See id.* at 97–99.

58. I note that Yannotti's former attorneys, Joseph Corozzo and James Kousouros, did not submit a reply brief on Yannotti's motions. Therefore, Yannotti's new attorney, Diarmuid White, may submit a short reply memorandum of law on this issue, within one week of the date of this Opinion. The Government has indicated that it is content to rest on its papers on this issue. *See* Tr. at 101.

59. Yannotti Mem. at 19.

60. *See* Government's Memorandum in Opposition to Defendants Michael Yannotti's and Louis Mariani's Pretrial Motions at 29.

61. *See* Tr. at 96.

62. *See United States v. Ojeda Rios,* 495 U.S. 257, 262, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990) (holding that section 2518 requires the Government to seal intercepted recordings immediately upon expiration of the underlying surveillance order or to provide an adequate explanation for its failure to do so).