**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2415
_____

UNITED STATES OF AMERICA

v.

RAYMOND MAINOR,
                    Appellant

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(Criminal No. 2:06-cr-140)
District Judge:  Honorable Lawrence F. Stengel

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2010

_____

Before: AMBRO, CHAGARES, and STAPLETON, Circuit Judges,

(Filed: September 3, 2010)

_____

OPINION OF THE COURT

_____

CHAGARES, Circuit Judge,

A jury sitting in the United States District Court for the Eastern District of Pennsylvania returned a guilty verdict against Raymond Mainor on several narcotics and firearms charges and the District Court thereafter sentenced him to an aggregate term of 300 months in prison. Mainor brings this appeal, challenging several aspects of his conviction and sentence. For the reasons expressed herein, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the essential facts. On February 8, 2006, District Judge Michael Baylson authorized a warrant for electronic surveillance of Mainor's cellular telephone in furtherance of an investigation into his suspected drug trafficking. Over the course of the following month, law enforcement personnel obtained substantial evidence corroborating their belief that Mainor was heavily involved in an organization engaged in trafficking cocaine and crack cocaine, and which operated out of his Philadelphia residence. Mainor's residence is located within 1,000 feet of a school.

On March 4, 2006, Mainor sold from his house 390 grams of cocaine to Abdul Rasheed, whose vehicle was subsequently stopped and searched by police. Rasheed testified at trial that he purchased the cocaine from Mainor.

On March 8, 2006, Mainor's car was stopped by a local police officer shortly after he purchased fifteen kilograms of cocaine from Mark Walker at an intersection within

2

1,000 feet of a school. The officer who pulled Mainor over detected a strong odor of cocaine from the car, and therefore asked Mainor to step out and be seated in his patrol car. Fifteen or twenty minutes thereafter, a trained narcotics canine signaled the presence of drugs in the trunk of Mainor's car. Mainor was arrested and his car towed. Upon issuance of a search warrant, police officers found the fifteen kilograms of cocaine inside the trunk.

Meanwhile, though authorities were in the process of obtaining a search warrant for Mainor's residence, surveillance officers stationed there approached the house upon suspicion that material evidence would soon be destroyed. The officers knocked on the front door and announced their presence; a man inside the house opened the door for a moment, but quickly slammed it shut. Two men ran up the stairs in the house and, after breaking an upstairs window, fled to another house via rooftop. After entering and securing the house, the officers waited until the search warrant had been authorized. Upon issuance of the warrant, the officers searched the house and found a safe containing $28,375 in an upstairs bedroom, and an emptied safe cemented into the basement floor. They found the following items in the kitchen:

- A bag containing 1.006 kilograms of cocaine

- A bag containing 33.7 grams of cocaine

- A bag containing 6.4 grams of crack-cocaine

- Various paraphernalia containing cocaine and crack-cocaine residue

3

- Various substances (e.g., baking soda, boric acid, Insotol, and Procaine) and appliances used for cutting cocaine and converting it into crack-cocaine

- Documents demonstrating that the house was Mainor's residence

In a second-floor bedroom, officers found the following:

- In a closet, a fully loaded and operable Bryco Arms 9 millimeter semiautomatic handgun, with one round loaded in the chamber; an electronic money counter, an organizer containing telephone numbers and "tally sheets"; and a laptop computer containing telephone numbers, tally sheets, and an image of piles of United States currency

- On a nightstand next to the bed, documents (including a bank statement and a municipal court notice) containing Mainor's name.

On March 9, 2006, the Government filed a complaint against Mainor charging him with numerous drug and firearms offenses. A grand jury returned an initial indictment on March 29, 2006, and a ten-count superseding indictment on December 6, 2006. The superseding indictment charged Mainor with: distribution of, and possession with intent to distribute, cocaine and crack-cocaine, in violation of 21 U.S.C. § 841(a)(1); distribution of, and possession with intent to distribute, within 1,000 feet of a school, cocaine and crack-cocaine, in violation of 21 U.S.C. § 860(a); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [1]

---

[1] On December 12, 2006, the Government filed, pursuant to 21 U.S.C. § 851(a)(1), an information stating that Mainor previously had been convicted of a felony controlled

4

Before trial, Mainor filed several motions, including: a motion to suppress evidence obtained from the search of his car; a motion and two supplemental motions to suppress evidence obtained from electronic and video surveillance; and two motions to dismiss the indictment for violations of the Speedy Trial Act. The District Court[2] denied these motions and trial commenced on October 17, 2007. The jury returned a guilty verdict on all counts, and the District Court thereafter sentenced Mainor to 300 months of imprisonment, which represented the minimum statutory sentence available. This timely appeal followed.[3]

II.

Mainor argues that the District Court erred by denying his motion to suppress the evidence obtained from the wiretap, as well as his motion to suppress the evidence obtained from the search of his car. We address these claims in turn.

A.

Mainor asserts three independent challenges to the introduction at trial of the electronic surveillance evidence obtained pursuant to Title III of the Omnibus Crime

---

substance offense in the Court of Common Pleas of Philadelphia County.

[2] Because he had signed the warrant authorizing electronic surveillance, Judge Baylson denied Mainor's motion to suppress the surveillance evidence after holding an evidentiary hearing. Judge Stengel denied the other motions.

[3] The District Court exercised subject-matter jurisdiction pursuant to 18 U.S.C. § 3231, and our appellate jurisdiction arises under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

Control and Safe Streets Act of 1968 ("Title III"), Pub. L. 90-351, 82 Stat. 197, as amended, 18 U.S.C. §§ 2510-2522.[4]

1.

Mainor first claims that the affidavit of Special Agent Gregory Yensan,[5] which accompanied the warrant application submitted by an Assistant United States Attorney ("AUSA"), did not adequately demonstrate that an electronic wiretap was necessary, given the success of alternative investigative techniques.

Title III requires that an application for an electronic surveillance warrant include, inter alia, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  We have long held that this provision "does not require the [G]overnment to exhaust all other investigative procedures before resorting to electronic surveillance."  United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997) (citations omitted).  Instead, "the [G]overnment need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient."  Id. (quoting United States v. McGlory, 968 F.2d 309, 345 (3d Cir.

---

[4] "We review de novo the question of whether a full and complete statement of necessity for a wiretap was made in the application," and "we will review the [issuing] court's determination of necessity for an abuse of discretion."  United States v. Phillips, 959 F.2d 1187, 1189 (3d Cir. 1992).  All other legal issues regarding the propriety of the warrant are subject to our plenary review.

[5] Special Agent Yensan, an investigative officer with the Drug Enforcement Administration, was personally involved with the Mainor investigation.  Appendix ("App.") 539.

1992)).  Additionally, "in determining whether this requirement has been satisfied, a court 'may properly take into account affirmations which are founded in part upon the experience of specially trained agents,'" id. (quoting United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1989)), and "[t]he [G]overnment's showing is to be 'tested in a practical and commonsense fashion,'" id. (quoting McGlory, 968 F.2d at 345).

Even a cursory review of Special Agent Yensan's affidavit demonstrates compliance with § 2518(1)(c).  Though Mainor fails to acknowledge it, Special Agent Yensan explained in thirteen detailed paragraphs why "[t]he interception of wire communications . . . is the only available technique with a reasonable likelihood of securing the evidence necessary" to accomplish the "overall goals of the investigation[,] that is[,] to determine the complete scope of the [drug] organization . . . ."  App. 576. And while Mainor complains that continued reliance on a confidential informant would have yielded adequate evidence (making a Title III wiretap unnecessary), Special Agent Yensan explained that although the confidential source had indeed provided useful information, he or she had been unable to provide information regarding the supply source of Mainor's drugs.  Id.  The affidavit also went on exhaustively to explain why physical surveillance, grand jury investigations, personal interviews, pen registers, telephone records, and physical search warrants were insufficient investigative tools. App. 575-80.  We find the application sufficient, and hold that § 2518(1)(c) did not require suppression.

2.

Mainor also argues that the warrant authorizing electronic surveillance of his cell phone was invalid because the AUSA's application seeking the warrant inadvertently referenced an Authorization Order issued by the Attorney General ("AG") that had expired a year earlier. App. 527. The Government concedes that a typographical error appeared in the AUSA's wiretap application. The application, however, was accompanied by a Department of Justice ("DOJ") memorandum that did accurately reference an extant Authorization Order, and in which a Deputy Assistant AG authorized the application pursuant to the authority delegated to her by that Authorization Order.[6] Accordingly, the Government argues, the District Court correctly declined to suppress the electronic surveillance evidence due to the minor error in the AUSA's application. We agree.

Title 18 U.S.C. § 2518(10)(a)(ii), under which Mainor asserts his claim, permits a defendant to challenge electronically obtained evidence if "the order of authorization or approval under which it was intercepted is insufficient on its face[.]" Despite the typographical error in the AUSA's application, we conclude that the District Court correctly denied the motion to suppress. We need not address at length whether the wiretap order violated the statute by virtue of the application's inaccurate reference to the expired Authorization Order, as "[e]very circuit to consider the question has held that §

---

[6] A Deputy Assistant AG may authorize Title III applications if the AG specially designates that official to approve such applications. 18 U.S.C. § 2516(1).

8

2518(10)(a)(ii) does not require suppression if the facial insufficiency of the wiretap order is no more than a technical defect." United States v. Moore, 41 F.3d 370, 374 (8th Cir. 1994). We, too, have so held. See United States v. Traitz, 871 F.2d 368, 378-80 (3d Cir. 1989) (where wiretap order failed to identify by name the authorizing DOJ official, finding suppression unwarranted even assuming that the order violated the statute); United States v. Acon, 513 F.2d 513, 517-19 (3d Cir. 1975) (where an appropriate DOJ official approved wiretap application in fact, but a DOJ official not authorized to approve the application signed the approval memorandum, holding violation too "technical" to require suppression). We easily conclude, therefore, that the typographical error appearing in the AUSA's application does not demand suppression.

3.

Finally, Mainor argues that the Government's interception of his electronic communications violated Title III's "notice and inventory" provision, which appears in 18 U.S.C. § 2518(8)(d). That subsection requires the judge issuing the warrant to "cause to be served" upon the target of the electronic surveillance the following information: (1) the fact that the warrant has been issued; (2) the date of its entry and the period for which surveillance has been authorized; and (3) whether communications were in fact intercepted. Id. Such notice must be provided "within a reasonable time but not later than ninety days after," as is relevant here, "the termination of the period of an [electronic search warrant]." Id. Mainor argues here that he did not receive notice until 312 days after the authorized surveillance period had expired, and that suppression of the

9

communications is therefore warranted. He downplays, however, Title III's express provision that "[o]n an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed." Id.[7] Judge Baylson issued three such orders, authorizing that notice ultimately be delayed until January 12, 2007. Notice was mailed on this date, and Mainor concedes that he received such notice on or about January 16, 2007. Mainor Br. at 39. We find no violation of Title III's notice and inventory requirement.

\* \* \*

The District Court correctly denied Mainor's motions to suppress evidence obtained from electronic surveillance pursuant to the Title III warrant.

---

[7] Mainor does not acknowledge this provision in his principal brief. He argues in his reply brief that because Judge Baylson issued the first extension order on June 9, 2006 – by our count, ninety-two days after the authorized surveillance period expired – the extension order is invalid, and thus § 2518(d)(8) has been violated. Mainor Reply Br. at 21-22. Mainor identifies no authority for the proposition that a tardy extension order itself requires invalidation of the inventory notice once it is ultimately provided pursuant to the order. Whether this claim has merit in the abstract we need not decide. Cf. United States v. Vento, 533 F.2d 838, 863 (3d Cir. 1976). As the Government correctly identifies, Mainor received actual notice of the electronic surveillance through discovery provided to him on May 3, 2006, before the first ninety-day period had expired. As such, any minor delay in the filing of an extension order had no prejudicial effect on him. See id. at 864 ("[T]he absence of formal notice may be cured by actual notice . . . .") (citing United States v. Iannelli, 477 F.2d 999, 1003 (3d Cir. 1973)); see also United States v. Lawson, 545 F.2d 557, 565 (7th Cir. 1975) (where defendant received actual notice of wiretap three months before suppression hearing, finding that two-year delay in providing notice under Title III did not warrant suppression), abrogated on other grounds, United States v. Ojeda Rios, 495 U.S. 257, 264-64 & n.5 (1990) .

B.

Mainor next asserts a threadbare claim that the stop and subsequent search of his car, as well as his arrest, occurred without probable cause. He appears to argue that information gleaned from the wiretap did not support a reasonable belief that he would be conducting a drug transaction on March 8, 2006. This argument is meritless.[8]

As a result of the electronic surveillance, authorities heard Mainor tell another member of his organization on March 7, 2006 – three days after Abdul Rasheed had been apprehended for purchasing cocaine directly from Mainor – that "we are supposed to be cool tomorrow," and later confirmed that "[w]e are on for tomorrow."[9] App. 33-34. Mainor later told another individual on the phone that "I'll have it for you in a few, just give me enough time, I'll call you." App. 34. On the morning of March 8, Mainor called Mark Walker – from whom he would purchase the drugs – and told him to meet near a location known as "Old [H]ead's house." App. 35. Mainor thereafter passed that location in his car without stopping, and then called Walker and told him not to meet there "because he had observed undercover cops on the corner." App. 35; see also App.

---

[8] We review the District Court's denial of the motion to suppress physical evidence for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts. United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003).

[9] Mainor quibbles with the District Court's interpretation of purportedly "ambiguous" utterances heard over the wiretap. We find clear, however, the intent behind the conversations that ultimately led the police to believe that Mainor was setting up a drug transaction. The District Court's interpretations of the relevant wiretap communications were not clearly erroneous.

11

447.  Surveillance officers then witnessed Mainor meet Walker at an alternative location and get into Walker's car empty-handed.  App. 35.  After Walker drove back to Mainor's vehicle, the officers watched Mainor exit the car, open the trunk, retrieve a large plastic bag, and place it in the trunk of his own vehicle.  App. 35.  Minutes later, Philadelphia police stopped Mainor for a moving violation, and the search of his car as described above followed.  App. 36.

Mainor does not fully articulate how the Government lacked probable cause to stop his car or arrest him thereafter.  He states that Special Agent Yensan had but a mere "inchoate hunch" of the March 8, 2006 drug transaction, which did not arise to probable cause to stop and search the car.  We disagree.  The District Court found that the electronic and physical surveillance of Mainor established probable cause to stop the car.  This conclusion is quite clearly correct.[10]  "To determine whether an officer had probable cause . . . we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).  "[T]he substance of all the definitions of probable cause is a

---

[10] The District Court also found that the moving violation established probable cause to stop the car, independent of the probable cause to suspect the presence of narcotics in the car.  App. 36.  The District Court's factual finding that Mainor had committed a moving violation is supported by the record, and its legal analysis is correct.  See Whren v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

12

reasonable ground for belief of guilt[.]"  Id. (quoting Ybarra v. Illinois, 444 U.S. 85, 91 (1979); see also Illinois v. Gates, 462 U.S. 213, 235 (1983) (a "probability, and not a prima facie showing, of criminal activity" is required for probable cause) (internal citation omitted).

The electronic and physical surveillance easily established an objectively reasonable ground to believe that Mainor had only minutes before executed a large-scale drug transaction with Walker and that the drugs were still present in the vehicle.  Thus, the stop of the vehicle was patently lawful.  See Maryland v. Dyson, 527 U.S. 465, 467 (1999) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.") (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam)) (alteration in Dyson); United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) ("The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if probable cause exists to believe it contains contraband.") (internal quotation marks omitted).  Accordingly, the officers could have lawfully arrested Mainor and searched the car at that time.[11]  Choosing not to do so, the responding officer nonetheless detected a strong smell of cocaine emanating from the car upon his approach, further confirming a reasonable belief that drugs were in the car.

---

[11] The parties dispute whether Mainor had been "arrested" when the officer requested that he sit in the back of the patrol car.  We need not address this issue, because we find that the police had probable cause to arrest Mainor at the time of the stop, and thus the point in time when he was actually arrested is immaterial.

13

Removing all doubt about the reasonability of such a belief, the narcotics canine minutes later signaled the presence of drugs in the car. At no point during the entire episode was probable cause lacking. No constitutional error resulted from the search and seizure of Mainor or his vehicle,[12] and the District Court properly refused to suppress the evidence obtained from the search.

III.

Mainor argues that the evidence presented at trial was insufficient to support the charges for the contraband discovered in his house. First, he claims that there was insufficient proof that he personally possessed the drugs found in his home, because at least three others had access to his residence. Second, he argues that the evidence was insufficient to show that the 9 millimeter semiautomatic firearm found in his bedroom closet was possessed "in furtherance" of a drug-trafficking crime, as required by 18 U.S.C. § 924(c). We address each claim in turn.[13]

---

[12] The officers elected simply to arrest Mainor, tow the car, and then search it once a search warrant had been procured. Mainor does not challenge these procedures.

[13] We exercise plenary review over challenges to the sufficiency of the evidence. United States v. Bornman, 559 F.3d 150, 152 (3d Cir. 2009). We must "examine the totality of the evidence, both direct and circumstantial, and must credit all available inferences in favor of the government." United States v. Sparrow, 371 F.3d 851, 852 (3d Cir. 2004) (quotation omitted). Further, "[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses." United States v. Schoolcraft, 879 F.2d 64, 69 (3d Cir. 1989). Rather, we must affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in Voigt). Mainor's burden "is extremely high." United States v. Lore, 430 F.3d 190, 203 (3d Cir. 2005) (citation omitted).

14

## A.

Since three other individuals had access to his residence, Mainor argues that the evidence presented at trial could not permit a rational jury to conclude that he himself possessed the cocaine in his house with the intent to distribute it. He is incorrect. Because Mainor did not have actual possession of the drugs seized in his house, we ask whether the trial evidence supported a conclusion that he constructively possessed them, United States v. Martorano, 709 F.2d 863, 866 (3d Cir. 1983), and we conclude that it did. "Constructive possession exists if an individual 'knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (quoting United States v. Blackston, 940 F.2d 877, 883 (3d Cir. 1991)). Exclusive possession is not a requirement; rather, possession may be shared with others. United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972). Although mere proximity to the drugs, mere presence on the property where they are located, or mere association with the person who does control the drug or the property is insufficient alone to establish constructive possession, United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996) (citation omitted), the evidence adduced in this case demonstrates much more. Combined with the electronic and physical surveillance of Mainor's drug-related activity on March 8, 2006 and the several days preceding it, the contraband recovered in the kitchen of Mainor's residence and his own bedroom easily supported the jury's determination that Mainor knowingly exercised dominion and control over the cocaine. The jury had before

15

it testimony that only days before Adbul Rasheed had purchased cocaine directly from Mainor inside the house. A bowl containing drug residue recovered from the kitchen had Mainor's fingerprint on it. Documentary evidence found in Mainor's bedroom further evidenced his substantial drug-trafficking operations. These are but a few aspects of the overwhelming quantum of evidence presented to the jury. Mainor's conviction for possession with intent to distribute the cocaine found in his house was supported by sufficient evidence.

B.

To convict Mainor for possession with a firearm in furtherance of a drug-trafficking crime, the Government was required to prove the following: (1) that he committed a predicate drug-trafficking crime; (2) that he knowingly possessed a firearm; and (3) that he did so in furtherance of the predicate drug-trafficking crime. United States v. Bobb, 471 F.3d 491, 496 (3d Cir. 2006); 18 U.S.C. § 924(c). "To support a conviction under this statute, the Government must show that the firearm was possessed by the defendant to advance or promote criminal activity." Id. (citing United States v. Lawrence, 308 F.3d 623, 630 (3d Cir. 2002) ("Merely determining that the defendant was in possession of a sidearm is not enough to support the conviction; we must also consider whether the weapon was possessed 'in furtherance of . . . a drug trafficking crime.'")). The following nonexclusive factors are relevant to the in-furtherance determination:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal),

16

whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004) (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)). Stated differently, the Government must adduce "evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense." Id. (quoting Ceballos-Torres, 218 F.3d at 414) (internal quotations marks omitted).

The Government adduced such evidence in this case. We break no new ground by recognizing that "a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection." United States v. Duran, 407 F.3d 828, 840 (7th Cir. 2005) (citation omitted). This is particularly true here, where a fully loaded, 9 millimeter semiautomatic handgun with one round in the chamber – and bearing Mainor's fingerprint – was discovered in his bedroom closet, mere steps away from a substantial cache of drugs and drug-processing materials. Moreover, Mainor had previously been convicted of a drug-trafficking felony, and thus his possession of the firearm was illegal. Additionally, the evidence showed that Mainor had conducted drug transactions directly out of his home. The in-furtherance "standard is satisfied if the firearm was kept available for use should it be needed during a drug transaction, and the defendant intended the firearm to be accessible for that purpose." United States v. Poe, 556 F.3d 1113, 1127 (10th Cir. 2009). The bedroom closet where authorities discovered the firearm also contained documentary evidence demonstrating Mainor's personal

17

connection with the drug organization operating out of his house; as such, the jury was entitled to find that the readily accessible weapon was possessed specifically to protect his ongoing narcotics operation and any transactions conducted from his home.[14]  Viewed in the light most favorable to the Government, we conclude that the evidence was sufficient to support Mainor's § 924(c) conviction.  See United States v. Loney, 219 F.3d 281, 289 (3d Cir. 2000) (holding that in-furtherance requirement "is satisfied if the [G]overnment shows that the weapon facilitates or has the potential to facilitate the drug offense. . . .  A weapon's physical proximity to narcotics may be sufficient to provide the nexus required between the weapon and the drug charges.") (citation omitted); accord United States v. Iglesias, 535 F.3d 150, 156-57 (3d Cir. 2006), cert. denied, 129 S. Ct. 2819 (2009).

IV.

Mainor advances two final arguments:  (1) that the superseding indictment should have been dismissed due to a violation of the Speedy Trial Act; and (2) that the District Court committed plain error by issuing a mandatory 20-year sentence for his conviction under 21 U.S.C. § 841(a)(1)(A), because the Special Information filed under 21 U.S.C. § 851 (regarding Mainor's prior felony drug conviction) was not signed by a Government

---

[14] Mainor asserts the same argument with regard to possession of the gun – that the evidence was not sufficient to prove possession by virtue of others' access to the house – which we have rejected above.  We reject his current argument for the same reasons, but note further the fact that the gun was discovered in his own bedroom, with his own fingerprint on it.  The evidence was more than sufficient to support the jury's determination that Mainor knowingly exercised dominion and control over the gun.

18

attorney.  A thorough review of the trial record persuades us that these claims are devoid of merit, and we reject them without further discussion.

V.

For the reasons we have articulated, Mainor's conviction and sentence will be affirmed.