**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1172
_____

UNITED STATES OF AMERICA

v.

ANTHONY QUAMAINE BROWN,
also known as BX,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-20-cr-00108-006)
District Judge: Honorable Malachy E. Mannion

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2022

_____

BEFORE: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: May 1, 2023)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

RESTREPO, *Circuit Judge*

Anthony Quamaine Brown appeals the denial of his motion to suppress wiretap evidence without an evidentiary hearing. Brown avers the government's affidavit establishes it unlawfully intercepted cell phone communications without the District Court's authorization. Because we find the ambiguity in the record sufficient to create a dispute of fact regarding the wiretap's legality, we will remand to the District Court for an evidentiary hearing on the suppression motion.

I.       **Factual and Procedural History**

On May 18, 2021, Brown was charged with one count of conspiracy to distribute and possess with intent to distribute heroin and fentanyl in violation of 21 U.S.C. § 846. He filed a motion to suppress the wire and electronic communications he made to co-conspirator Robert Thompson's cell phone, claiming they were intercepted in violation of the Federal Wiretap Statute, Title 18 U.S.C. § 2158 and the Fourth Amendment.

To support this claim, Brown cited the following facts of record: on April 7, 2020, the District Court authorized a thirty-day wiretap for wire and electronic communications on Thompson's cell phone. The wiretap was authorized to begin on April 7, 2020 and was set to terminate on May 6, 2020.[1] On June 1, 2020, FBI Agent Shawn Yellen signed a master affidavit of probable cause in support of a search warrant. In the affidavit, Agent Yellen stated the District Court authorized the wiretap on April 7, 2020, but that

---

[1] The Court later granted an extension on the wiretap, moving the termination date back to June 4, 2020.

the "[i]nterception of wire and electronic communications over THOMPSON's 'Target Phone 1' *commenced on March 28, 2020*." App. at 202 (emphasis added). The master affidavit referenced calls and texts between Brown and Thompson starting on April 8th and continuing through April 11th. It also referenced an April 4, 2020, interview with a cooperating witness where the witness disclosed knowledge of an "Anthony," which Agent Yellen believed referred to Brown based on his "training, experience and knowledge of this investigation." App. at 241.[2]

Prior to pleading guilty, Brown filed a motion to suppress evidence obtained through the wiretap of Thompson's phone. He argued that the FBI's master affidavit establishes the government began intercepting wire communications eleven days before the April 7, 2020 start date on the District Court's authorizing order. Brown claimed the record supported his allegation because the FBI knew who he was *before* an April 4, 2020 interview with a cooperating witness. He stated that the government failed to explain where it learned of his name before the April 4th interview, if not from the unauthorized interception of Thompson's cellphone. Brown argued the uncertainty as to when the government began to intercept his communications warranted an evidentiary hearing.

---

[2] According to Brown's presentence report (PSR), FBI agents executed a search warrant on June 2, 2022 for a trailer in North Carolina rented by Brown's girlfriend, Amanda McPhillips. Inside, agents found and seized approximately 87 grams of fentanyl and thousands of empty glassine bags inside a box addressed to Brown. PSR ¶ 15.

3

The government acknowledged the master affidavit provided a wiretap start date of March 28, 2020, but argued the date "was an obvious typographical error." App. at 15. It pointed out that the preceding sentence in the same paragraph of the alleged error correctly cited the date on the Court's order — April 7, 2020. To support the argument that the interceptions did not start before April 7th, the government claimed that starting the wiretap without the District Court's order would have been "physically and legally impossible" because the cellular service provider—in this instance AT&T—could not otherwise lawfully assist the FBI in intercepting and storing the communications.[3]

The District Court agreed with the government and denied the motion to suppress, finding the March 28, 2020 commencement date in the master affidavit a "technical defect" that did not warrant suppression. App. at 25. In so finding, the Court noted there was "simply no evidence of any agreement between the agents and AT&T to unlawfully begin the wiretap" without an authorizing order. App. at 16-17.

After the denial of his suppression motion, Brown entered a conditional guilty plea to conspiracy to distribute and possess with intent to distribute at least 1 but less than 3 kilograms of heroin and at least 40 but less than 160 grams of fentanyl. His conditional plea reserved his right to appeal only the denial of his motion to suppress. He was

---

[3] In its response to Brown's motion, the government attached a photograph of a chart on a white board from the wire interception room of the FBI office. The chart indicates the start date for the Thompson "TP1" is 4/21. Case: 3:20-cr-00108-MEM Doc. 407, Exhibit A (filed 5/24/21).

4

sentenced to 180 months' imprisonment on January 21, 2021. Brown timely appealed to this Court.[4]

## II.    Analysis

The District Court denied Brown's motion to suppress without an evidentiary hearing, finding that Brown failed to produce evidence to support his claim that the government began wiretapping Thompson's cell phone before the authorized date. While we acknowledge the speculative nature of Brown's claim, we recognize the District Court's finding that the affidavit's start date was a "technical defect" also rests on speculation. Given the uncertainty as to the wiretap's inception and the absence of evidence resolving that uncertainty, we conclude an evidentiary hearing is warranted.[5]

Under 18 U.S.C. § 2518(10)(a)(iii), a defendant can "move to suppress the contents of any wire or oral communication intercepted" if "the interception was not made in conformity with the order of authorization or approval."[6] Adherence to the

---

[4] Brown also appeals the denial of his motion to compel discovery. We conclude that he waived the right to appeal this claim when he entered his conditional guilty plea. In his written plea agreement, Brown only reserved the right to appeal the denial of his motion to suppress. "[A] defendant who enters a conditional plea can only appeal issues that have been preserved for review." *United States v. Bentz*, 21 F.3d 37, 38 (3d Cir. 1994) (citing Fed. R. Crim. P. 11(a)(2)); *United States v. Markling*, 7 F.3d 1309, 1313 (7th Cir. 1993) (requiring that a conditional plea must "precisely identify which pretrial issues the defendant wishes to preserve for review").

[5] The District Court had subject matter jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[6] When a defendant raises a claim of illegal surveillance, the government is required to "affirm or deny the occurrence of the alleged unlawful act." 18 U.S.C. § 3504(a)(1).

regulations in § 2518(10)(a)(iii) insures, inter alia, effective judicial supervision of the interception of wire communications. If electronic surveillance is conducted without a court's authorization, the search is unlawful and subject to suppression. *United States v. Cafero*, 473 F.2d 489, 497–98 (3d Cir. 1973). Judicial authorization and approval, along with the other protective procedures required by Title III, The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, ensures that searches involving the interception of wire communications are conducted with "the reasonableness which the Fourth Amendment requires." *Cafero*, 473 F.2d at 497 (citing *Berger v. New York*, 388 U.S. 41, 60 (1967)).

We review a district court's decision whether to conduct an evidentiary hearing on a motion to suppress for an abuse of discretion. *United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010). "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Id.* at 105. A defendant raises an issue of material fact "by submitting evidence that, if true, would tend to establish an essential element of his or her claim that evidence was obtained unconstitutionally." *Id*. at 106 (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). In the wiretapping context, a hearing may be warranted

---

Here, the government filed a memorandum of law in response to Brown's motion to suppress.

6

in circumstances where the petitioner presents "sufficient indica of illegal surveillance." *In re Horn*, 458 F.2d 468, 471 (3d Cir. 1972).

We conclude Brown has presented enough indicia of illegal surveillance to create a material dispute of fact. Given that he has established the basis for his motion to suppress, we remand for a hearing to determine whether the government's surveillance was lawful. While the government may be correct that initiating a wiretap without an authorizing order is exceedingly improbable, we note it did not provide concrete evidence establishing that the March 28, 2020 date was an "obvious typographical error," such as an affidavit from Agent Yellen or the cell phone provider. Moreover, although the master affidavit does not reference any evidence discovered by wiretap prior to April 7, 2020, this does not disprove Brown's theory that the government learned of his identity through unauthorized surveillance before the April 4, 2020 interview of the cooperating witness.[7] While Brown's theory arising from the disputed fact is unproven, so is the government's position that the start date given in the affidavit is an "obvious typographical error." Government's Brief, 16.

The government relies on *Doe v. Groody*, 361 F.3d 232, 240 (3d Cir. 2004), to support its position that the allegedly incorrect inception date in the master affidavit did not warrant suppression. *Groody* cites decisions where "an ambiguity or clerical error" in

---

[7] Brown stated in his reply brief in support of his motion to suppress that there was nothing in the government's pre-trial discovery indicating that he was part of the FBI's investigation prior to April 4, 2020, the date of the interview with the cooperating witness.

7

a warrant can be resolved "with reference to the affidavit." *Id.* That is not the case here, where the alleged clerical error is in an affidavit filed after the wiretap was initiated, and the alleged error indicates the scope of the wiretap was broader than permitted by the District Court's order. The question remains whether the electronic surveillance was conducted in the timeframe described in the affidavit or in accordance with the authorizing order.

If the wiretap was conducted in the timeframe stated in the affidavit, it exceeded the scope of the order and was unlawfully overbroad. *Groody,* 361 F.3d at 242–43 (holding affidavit cannot lawfully broaden the scope of a narrower warrant because judge authorizes search as defined by warrant). Hence, an evidentiary hearing is necessary to determine the actual facts underlying the FBI's wiretap of Thompson's cellphone. *See United States v. Traitz*, 871 F.2d 368, 379 (1989) (holding courts may look beyond the face of the authorizing order to the facts "as they actually existed" to determine if there was compliance with the substantive procedures outlined in § 2518) (citing *United States v. Acon*, 513 F.2d 513, 518 (3d Cir. 1975)).[8]

---

[8] The government also cites *United States v. Mainor*, 393 F. App'x 10 (3d Cir. 2010) and *United States v. Wallace*, No. 1:09-cr-0179, 2009 WL 3182903 (M.D. Pa. Sept. 30, 2009). These decisions are not controlling, and they also address circumstances where a mistake in a warrant could be rectified by referring to either an affidavit or accompanying memorandum. As we explain above, those are not the circumstance that we address here.

8

**III.    Conclusion**

For the foregoing reasons, we will remand to the District Court for an evidentiary hearing on the motion to dismiss.